* Substituted for Charles Zemski, Acting District Director, pursuant to Federal Rule of Appel-

thereof, that meaning is generally preferred which operates against the party who supplies the words or from whom a writing otherwise proceeds.").

Applying that principle, we will construe the ambiguity against the Government and hold that Paragraph 11 of Gebbie's and Richter's plea agreements bars the United States Attorney for the Western District of Pennsylvania from prosecuting Gebbie and Richter for the same crimes and offenses that were at issue in the Ohio plea agreements.

**IV.**

In sum, and for the reasons given above, we will affirm the District Court's order.

Carlos PEREZ, Appellant

v.

Kenneth J. ELWOOD, District Director * Immigration and Naturalization Service

No. 01–3004.

United States Court of Appeals, Third Circuit.

Argued May 20, 2002.

Filed: June 28, 2002.

late Procedure 43(c)(2).

Lawrence H. Rudnick, Derek W. Gray (Argued), Steel, Rudnick & Ruben, Philadelphia, PA, Counsel for Appellant.

Robert D. McCallum, Jr., Assistant Attorney General, Christine A. Bither, Senior Litigation Counsel, James E. Grimes (Argued), U.S. Department of Justice, Civil Division, Office of Immigration Litigation, Margaret Perry, Esquire, U.S. Department of Justice, Office of Immigration Litigation, Washington, DC, Counsel for Appellee.

Before: BECKER, Chief Judge, GREENBERG, Circuit Judge, and BARZILAY, Judge, U.S. Court of International Trade.**

## OPINION OF THE COURT

BECKER, Chief Judge.

This is an appeal by Carlos Perez, a Colombian national and U.S. permanent resident, from an order of the District Court for the Middle District of Pennsylvania, the district where Perez is held in INS detention, denying his petition for a writ of *habeas corpus*. The petition challenged the Board of Immigration Appeals's ("BIA") affirmance of an order of removal entered by an Immigration Judge ("IJ") following Perez's conviction for conspiracy to launder money. In his *habeas* petition, Perez challenged the BIA's conclusion that he is ineligible to apply for relief pursuant to former § 212(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(c) (1994) (repealed). Perez argued that because he was convicted for conduct that occurred before the repeal of § 212(c), he was entitled to apply for a waiver of deportation under that provision. The District Court denied the writ on the ground that Perez was ineligible to apply for relief under § 212(c) because, under the new definition of the time of "conviction" created by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104–208, 110 Stat. 3009–546, Perez was convicted after the repeal of § 212(c).

Perez relies here on the Supreme Court's decision in *INS v. St. Cyr*, 533 U.S.

---

** Honorable Judith M. Barzilay, Judge, United States Court of International Trade, sitting by designation.

289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), contending that it overruled *Steele v. Blackman*, 236 F.3d 130 (3d Cir.2001), and *DeSousa v. Reno*, 190 F.3d 175 (3d Cir.1999), prior Third Circuit cases that held that aliens whose removal proceedings, like Perez's, were initiated after the repeal date of § 212(c), were ineligible for relief under that section. Perez also contends that *St. Cyr* requires us to hold that aliens like Perez, who are removable due to criminal conduct that occurred prior to the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214, and IIRIRA, are entitled to apply for relief under § 212(c). While we acknowledge that *St. Cyr* rejected the reasoning that we employed in *Steele* and *DeSousa*, we nonetheless will affirm the order of the District Court on the ground upon which the District Court relied, i.e., that under IIRIRA's definition of "conviction," Perez was convicted after the repeal of § 212(c) and cannot now obtain relief under the repealed statute.

## I.  Facts & Procedural History

Perez entered the United States in 1972 at the age of six and has lived in the U.S. since then as a lawful permanent resident. In January 1997, Perez was tried and found guilty by a jury in the United States District Court for the Northern District of California of conspiracy to launder money in violation of 18 U.S.C. § 371, based on criminal conduct that occurred in 1992. He was sentenced in June 1997 to 60 months in prison.

On October 27, 1999, while he was in prison, the INS issued Perez a Notice to Appear alleging that his criminal conviction rendered him removable from the U.S. On August 22, 2000, an IJ found Perez removable under 8 U.S.C. § 1227(a)(2)(A)(iii) based on his conviction for an "aggravated felony" as defined by 8 U.S.C. §§ 1101(a)(43)(D) & (a)(43)(U), which includes conspiracy to commit money laundering in the amount for which Perez was convicted. The IJ also found Perez ineligible for withholding of removal under the Convention Against Torture ("CAT"). Perez was released from criminal custody to the custody of the INS on August 24, 2000, after serving 52 months in prison.

Perez appealed the IJ's order to the BIA, contending: (1) that his conspiracy conviction did not constitute an "aggravated felony" (because he was not convicted of the underlying crime, only conspiracy); (2) that the IJ erred in denying his CAT claims; and (3) that he should have been allowed to apply for a waiver of deportation under former INA § 212(c), 8 U.S.C. § 1182(c) (1994) (repealed), because the criminal conduct underlying his conviction occurred before that section was repealed. The BIA affirmed the IJ's order, concluding that: (1) Perez was convicted of an aggravated felony within the meaning of the INA; and (2) although Perez qualifies to apply for withholding of removal under the CAT, he failed to demonstrate that it is more likely than not that he will be tortured if returned to Colombia, and is therefore not entitled to receive such relief. The BIA also rejected Perez's claim that he should have been allowed to apply for a § 212(c) waiver, citing Steele for the proposition that Perez is ineligible to apply for a § 212(c) waiver because removal proceedings were instituted against him after April 1, 1997, the effective date of the repeal of § 212(c).

Perez thereupon filed a petition for a writ of *habeas corpus* in the District Court for the Middle District of Pennsylvania, seeking a declaration that the retroactive application of IIRIRA (which repealed INA § 212(c)) to his criminal conduct is

unconstitutional, and seeking remand of his case to the IJ for consideration of relief under § 212(c). After holding its decision in abeyance until the Supreme Court issued its decision in *St. Cyr*, the District Court dismissed Perez's petition based on the fact that Perez's conviction occurred in June 1997, which was after the effective date of the section of IIRIRA that repealed § 212(c). The District Court concluded that relief under § 212(c) was therefore not available to Perez, and that there is nothing retroactive about his inability to apply for a waiver under that section.

Perez contends that the Supreme Court's holding in *St. Cyr*—that relief under INA § 212(c) remains available to aliens whose convictions were obtained by plea bargains and who would have been eligible for § 212(c) relief under the law in effect at the time of the plea—(1) overruled *Steele*, in which we held that § 212(c) relief is not available to aliens whose removal proceedings were initiated after the repeal of § 212(c); and (2) "suggested that 212(c) relief could ... remain available to aliens whose criminal conduct predated the enactment of the 1996 immigration amendments." Perez submits that, on the basis of *St. Cyr*, we must find that it would be unfairly retroactive to deny him the opportunity to apply for a waiver under § 212(c). The government takes issue with these contentions, but also endorses the reasoning of the District Court, that because Perez's June 1997 conviction was entered after former INA § 212(c) was repealed on April 1, 1997, § 212(c) is not available as relief from his removal order.

The District Court had jurisdiction pursuant to 28 U.S.C. § 2241, which grants district courts the authority to issue writs of *habeas corpus* in cases involving detainees held under the authority of the U.S. *See St. Cyr*, 533 U.S. at 300–01, 121 S.Ct. 2271; *Steele*, 236 F.3d at 133 (holding that district courts retain the authority to issue writs of *habeas corpus* to detained aggravated felon aliens following the passage of IIRIRA). We have jurisdiction to review the District Court's denial of a writ of *habeas corpus* based on 28 U.S.C. §§ 1291 & 2253.

## II. Statutory Background

Section 212 of the INA of 1952, formerly codified at 8 U.S.C. § 1182(c), excluded certain classes of aliens from the U.S., including those convicted of offenses involving moral turpitude or illicit traffic in narcotics. *See* 66 Stat. 163, 187 (1952). The section was subject to a waiver provision, § 212(c), which was codified at 8 U.S.C. § 1182(c). It provided:

> Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General . . . .

8 U.S.C. § 1182(c) (repealed). Although § 212(c) "was literally applicable only to exclusion proceedings, ... it ... has been interpreted by the Board of Immigration Appeals ... to authorize any permanent resident alien with 'a lawful unrelinquished domicile of seven consecutive years' to apply for a discretionary waiver from deportation." *St. Cyr*, 533 U.S. at 295, 121 S.Ct. 2271 (citing *Matter of Silva*, 16 I. & N. Dec. 26, 30 (1976)).

In 1990, Congress amended § 212(c) to bar discretionary relief to those convicted of an "aggravated felony" who had served a term of imprisonment of at least five years. *See* Immigration Act of 1990, Pub.L. No. 101–649, 104 Stat. 4978, 5052 (amending 8 U.S.C. § 1182(c)). When Congress enacted AEDPA on April 24,

1996, it included § 440(d), which barred § 212(c) relief to those aliens who were convicted of a broad set of offenses, including aggravated felonies, drug convictions, certain weapons or national security violations, and multiple convictions involving crimes of moral turpitude. *See* Pub.L. 104–132, 1110 Stat. 1214, 1277–79 (1996) (amending 8 U.S.C. § 1182(c)).

Later that same year, on September 30, 1996, Congress passed IIRIRA. IIRIRA § 304(b), which went into effect on April 1, 1997, repealed INA § 212(c), and replaced it with a new section, which is now codified at 8 U.S.C. § 1229b, and which gives the Attorney General authority to cancel removal only for a narrow class of inadmissible or removable aliens. That class does not include anyone previously "convicted of an aggravated felony." 8 U.S.C. § 1229b(a)(3). IIRIRA also changed the definition of when a money laundering conviction constitutes an "aggravated felony," as defined by 8 U.S.C. § 1101(a)(43)(D). That section formerly provided that an "aggravated felony" includes "an offense described in section 1956 of title 18, United States Code (relating to laundering of monetary instruments) or section 1957 of that title (relating to engaging in monetary transactions in property derived from specific unlawful activity) if the amount of the funds exceeded $ 100,000." IIRIRA § 321(a)(2) decreased the minimum amount of funds to $10,000, which brought Perez into its net.[1]

## III. Discussion

### A. The Legal Framework—Retroactive Application of Civil Statutes

■ Perez contends that it is unconstitutional for Congress to change the consequences of a crime for purposes of the immigration statutes after the date of the commission of the criminal acts. This argument appears to derive from the *ex post facto* clause, *see* U.S. Const. art. I, § 9, cl. 3 ("No Bill of Attainder or *ex post facto* law shall be passed."), but such an argument is not available to Perez because deportation statutes are civil in nature. They do not constitute criminal punishment for past acts, even where, as here, the alien qualifies for removal because of a past criminal act. *See INS v. Lopez–Mendoza*, 468 U.S. 1032, 1038, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984) (rejecting the argument that deportation is punishment for past behavior and therefore subject to the "various protections that apply in the context of a criminal trial"); *Harisiades v. Shaughnessy*, 342 U.S. 580, 594, 72 S.Ct. 512, 96 L.Ed. 586 (1952) ("Deportation, however severe its consequences, has been consistently classified as a civil rather than a criminal procedure."). Perez therefore may not challenge the retroactive application of IIRIRA's repeal of § 212(c) under the *ex post facto* clause, which applies only to the retroactive application of criminal statutes. *See Collins v. Youngblood*, 497 U.S. 37, 41, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990).

---

1. 8 U.S.C. § 1101(a)(43)(D) provides that an "aggravated felony" includes "an offense described in section 1956 of title 18 (relating to laundering of monetary instruments) or section 1957 of that title (relating to engaging in monetary transactions in property derived from specific unlawful activity) if the amount of the funds exceeded $10,000." Congress retroactively amended this section in September 1996 to lower the minimum amount of funds that must be involved for a money laundering conviction to constitute an "aggravated felony" from $100,000 to $10,000. 8 U.S.C. § 1101(a)(43)(U) extends the definition of "aggravated felony" to include "an attempt or conspiracy to commit an offense described in this paragraph." The amount of money to be laundered in the conspiracy for which Perez was convicted exceeded $10,000.

Nevertheless, there are limitations on when courts will interpret Congress to have applied civil statutes retroactively. Congress may apply civil laws retroactively as long as: (1) it indicates clearly its intention to do so; and (2) it would not violate the Constitution for it to do so. If Congress does not clearly indicate its intention to apply a civil statute retroactively, courts apply a presumption against retroactive application. The controlling precedent is *Landgraf v. USI Film Products,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), in which the Supreme Court applied a two-step process when determining whether amendments to civil statutes are intended to be retroactive.

In the first step, the Court asks "whether Congress has expressly prescribed the statute's proper reach." *Id.* at 280, 114 S.Ct. 1483. If so, and "[a]bsent a violation of ...[a] specific provision[ ] [of the Constitution,] the potential unfairness of retroactive civil legislation is not a sufficient reason for a court to fail to give a statute its intended scope." *Id.* at 267, 114 S.Ct. 1483. Therefore, if Congress speaks clearly in saying that it intends for a civil statute to apply retroactively, a court must effectuate Congress's intent, absent a constitutional violation. The clear statement requirement is an exacting one. "[C]ases where [the Supreme] Court has found truly 'retroactive' effect adequately authorized by statute have involved statutory language that was so clear that it could sustain only one interpretation." *Lindh v. Murphy,* 521 U.S. 320, 328 n. 4, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

If Congress has not spoken clearly to indicate its intent for a civil statute to apply retroactively, then a court must "determine whether the application of the statute to the conduct at issue would result in a retroactive effect." *Martin v. Hadix,*

527 U.S. 343, 352, 119 S.Ct. 1998, 144 L.Ed.2d 347 (1999). If there would be such a retroactive effect, then the court should presume that the legislation does not apply to the conduct in question, and apply it only prospectively. *Id.*

**B. St. Cyr's Effect on Steele and De-Sousa**

Perez first challenges the validity of our opinions in *Steele* and *DeSousa,* contending that the Supreme Court implicitly overruled these cases in *St. Cyr.* The BIA relied on Steele to reject Perez's argument that IIRIRA's repeal of § 212(c) is unfairly retroactive. *Steele* involved the review of a district court's denial of the *habeas* petition of Desmond Steele, a national of Grenada who was excluded after returning from that country, where he had attended his mother's funeral, because of his three prior misdemeanor marijuana possession convictions. The INS instituted exclusion proceedings after the effective date of IIRIRA (and after the end of the period in which the statute's transition rules applied). The IJ found Steele excludable and ineligible for CAT relief, and the BIA affirmed.

Steele had argued in his *habeas* petition, *inter alia,* that he was entitled to relief under former INA § 212(c) because his convictions (and the acts upon which they were based) took place prior to the enactment of IIRIRA. We rejected this argument, reasoning as follows:

> Section 1182(c) of Title 8[, INA § 212(c),] provides that waivers of inadmissibility might be granted to certain immigrants who traveled abroad for brief periods of time. Section 1182(c) was repealed by section 309(c) of IIRIRA, effective April 1, 1997, but by its terms is still applicable to certain removal proceedings initiated before its effective date. IIRIRA § 309(a). Be-

cause Steele's removal was initiated after April 1, 1997, section 1182(c) is not an available avenue of relief for Steele.

Steele argues that section 1182(c) must remain available in his case because its unavailability would constitute a retroactive application of the permanent provisions of IIRIRA to a conviction that preceded the Act and this result was not intended by Congress. We find Steele's argument foreclosed by our opinion in *DeSousa v. Reno*, 190 F.3d 175 (3d Cir.1999). In DeSousa, the petitioner was a citizen of Portugal who had been a lawful permanent resident of the United States since 1969. The petitioner had served four and one-half years in prison on an aggravated assault charge. DeSousa claimed that IIRIRA's amendments restricting eligibility for section 1182(c) waivers should not be construed to apply "retroactively" to his case, since his convictions pre-dated IIRIRA. We disagreed, finding it likely that Congress had intended the amended version of section 1182(c) to apply to convictions preceding the amendment. *Id.* at 186. Because the issue was not "absolutely clear," however, we proceeded to analyze whether the removal of relief was retroactive in any sense. We concluded, in accordance with our earlier opinion in *Scheidemann v. INS*, 83 F.3d 1517 (3d Cir.1996), that because the statute related only to the discretion of the Attorney General to grant a future waiver, its eligibility restriction had only prospective impact. 190 F.3d at 187.

*Steele*, 236 F.3d at 133–34. *DeSousa*, the earlier Third Circuit opinion on which *Steele* relied, concluded that AEDPA's changes to former INA § 212(c) did not have a "retroactive effect" within the meaning of the second step of the *Landgraf* test because § 212(c) relief could be granted solely in the discretion of the Attorney General.

In *St. Cyr*, the Supreme Court considered whether "the restrictions on discretionary relief from deportation contained in [AEDPA and IIRIRA] ... apply to removal proceedings brought against an alien who pled guilty to a deportable crime before their enactment." 533 U.S. at 293, 121 S.Ct. 2271. The Court applied *Landgraf's* two-step retroactivity analysis to IIRIRA's § 304(b), the section that repealed former INA § 212(c). The Court concluded that that section, which simply states that "Section 212(c) (8 U.S.C. § 1182(c)) is repealed," did not show Congress's unequivocal intent to apply the repeal retroactively to aliens like St. Cyr who had pleaded guilty before the repeal of § 212(c). Having decided that Congress did not unambiguously state its intention to make the repeal of INA § 212(c) retroactive, the Court went on to the second step of determining whether the rule would have an "impermissible retroactive effect for aliens who, like [St. Cyr], were convicted pursuant to a plea agreement at a time when their plea would not have rendered them ineligible for § 212(c) relief." *Id.* at 320, 121 S.Ct. 2271. The Court held that it did have such an effect, finding that:

> IIRIRA's elimination of any possibility of § 212(c) relief for people who entered into plea agreements with the expectation that they would be eligible for such relief clearly "attaches a new disability, in respect to transactions or considerations already past." *Landgraf*, 511 U.S. at 269, 114 S.Ct. 1483. Plea agreements involve a *quid pro quo* between a criminal defendant and the government. In exchange for some perceived benefit, defendants waive several of their constitutional rights (including the right to a trial) and grant the government numerous tangible benefits, such as promptly imposed punishment without the expen-

diture of prosecutorial resources. There can be little doubt that, as a general matter, alien defendants considering whether to enter into a plea agreement are acutely aware of the immigration consequences of their convictions.

*Id.* at 321–22, 121 S.Ct. 2271 (some internal quotation marks and citations omitted).

In so holding, the Court also rejected the INS's argument that because " § 212(c) relief is discretionary" the mere removal of the possibility of such discretionary relief does not have retroactive effect (since it was never guaranteed in the first place). *Id.* at 325, 121 S.Ct. 2271. The Court noted that "[t]here is a clear difference, for the purposes of retroactivity analysis, between facing possible deportation and facing certain deportation." *Id.* Perez argues that *Steele* and *DeSousa* are no longer valid because the *St. Cyr* Court, although it did not specifically overrule either case, rejected theories that are necessary to the holding of each.

In *Steele,* we concluded that the repeal of § 212(c) was likely made retroactive by IIRIRA § 309(c) (which replaced it with transitional rules), but declined to decide the retroactivity issue on the clear statement prong. Instead, relying on *DeSousa* (which in turn relied on *Scheidemann v. INS,* 83 F.3d 1517 (3d Cir.1996)), we stated "that because the statute related only to the discretion of the Attorney General to grant a future waiver, its eligibility restriction had only prospective impact." *Steele,* 236 F.3d at 134. Because we declined to rely on the "clear statement" ground, the reasoning that there would be no retroactive effect from the removal of a source of relief that was always only discretionary is a necessary ground supporting both *Steele* and *DeSousa.* As noted above, the Supreme Court rejected this reasoning in *St. Cyr,* stating that "[t]here is a clear difference, for the purposes of retroactivity

analysis, between facing possible deportation and facing certain deportation." 533 U.S. at 325, 121 S.Ct. 2271. The Court's rejection of this ground was not mere dicta; it was necessary to the Court's holding, because if the Court accepted the theory on which we relied in *DeSousa* and *Steele,* then it would have reached the opposite result in *St. Cyr.*

Although we have explained that *St. Cyr* rejected the ground on which *Steele* and *DeSousa* ultimately relied, thus establishing tension between these decisions, we do not suggest that in other cases with the same facts as *Steele* or *DeSousa,* we would not reach the same result on a different ground. More importantly for the resolution of this case, although the BIA relied on *Steele* to reject Perez's argument that IIRIRA's repeal of § 212(c) is unfairly retroactive, the District Court denied Perez's *habeas* petition on the independent, alternative ground that he was not convicted until after the effective date of the section of IIRIRA that repealed former INA § 212(c). Therefore, even if *St. Cyr* undermined *Steele* and *DeSousa,* Perez must also overcome the other ground on which the District Court relied when denying his petition in order to prevail in this appeal.

## C. Was Perez Convicted After the Repeal of IIRIRA?

In denying Perez's writ on the ground that he was not convicted until after the effective date of the section of IIRIRA that repealed former INA § 212(c), the District Court's reasoning was as follows. Former INA § 212(c) provided discretionary relief to aliens who were excludable or removable and otherwise met that section's requirements (i.e., they were legal resident aliens who had resided continuously in the U.S. for seven consecutive years). In this case, the event that triggered Perez's deportability was his felony

conviction for conspiracy to launder money. Therefore he was never even potentially eligible for § 212(c) relief until after he was convicted. And because he was convicted after § 212(c) was repealed, there is nothing retroactive about his inability to apply for a waiver under that section.

Under the District Court's approach, the reason Perez was not convicted until after the effective date of the IIRIRA section that repealed former INA § 212(c) is that IIRIRA's definitional amendments changed the definition of "conviction" for the purposes of the INA. The amendments provide that a "conviction" occurs for the purposes of the INA only at the point when a court sentences the defendant or when a court enters a formal judgment of guilt. The government contends that statutory language in these definitional amendments shows unequivocally that Congress intended the changes to apply retroactively. In order to determine whether the District Court was right that Perez is ineligible for relief under § 212(c), we must first determine when IIRIRA's new definition of "conviction" took effect, and whether it applies to Perez's conviction. Second, we must decide when, under IIRIRA's new definition of "conviction," Perez was convicted. These are legal questions over which we exercise plenary review. *Centerpoint Props. v. Montgomery Ward Holding Corp.*, 268 F.3d 205, 208 (3d Cir.2001).

■ As an initial matter, we must determine whether Congress meant for IIRIRA § 322 to apply retroactively, and thus whether it applies to Perez. IIRIRA § 322(c) states that the definitional amendments in that section "shall apply to convictions and sentences entered before, on, or after the date of the enactment of this Act." In our view, this statement evinces a clear congressional intent to apply the

statute retroactively. In *St. Cyr*, the Supreme Court cited the language quoted above from § 322(c) as an example of a clear statement of Congress's intent to apply a section retroactively (in contrast to the language of IIRIRAS 304(b), which it found to be ambiguous regarding Congress's intent to apply the repeal of INA § 212(c) retroactively). *See St. Cyr*, 533 U.S. at 320 n. 43, 121 S.Ct. 2271. We therefore think that Congress plainly intended for IIRIRA § 322 to apply retroactively. Importantly for this case, the St. Cyr Court also cited IIRIRA § 321, which amended the definition of "aggravated felony," as another example of a statute that Congress clearly intended to apply retroactively. *Id.* at 319, 121 S.Ct. 2271 (stating that "IIRIRA's amendment of the definition of 'aggravated felony,' for example, clearly states that it applies with respect to 'convictions ... entered before, on, or after' the statute's enactment date. § 321(b)").

Perez does not raise any arguments about why the retroactive application of IIRIRA § 322 would violate the Constitution. Because it is clear that Congress intended to apply IIRIRA's new definition of "conviction" retroactively, we need not proceed to the second step of the retroactivity analysis.

Concluding that IIRIRA's new definition of conviction applies to Perez, we must determine when, under the new definition, he was convicted. IIRIRA § 322, which is now codified at 8 U.S.C. § 1101(a)(48), provides as follows:

(1) IN GENERAL—Section 101(a) (8 U.S.C. § 1101(a)) is amended by adding at the end the following new paragraph:

"(48)(A) The term 'conviction,' means, with respect to an alien, a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where—"

"(i) a judge or jury has found the alien guilty ·or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to· warrant a finding of guilt," and

"(ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed."

IIRIRA § 322.

The government contends that we should define the terms "formal judgment of guilt," by reference to Federal Rule of Criminal Procedure 32(d)(1), which provides that:

[a] judgment of conviction must set forth the plea, verdict or findings, the adjudication, and the sentence. If the defendant is found not guilty or for any other reason is entitled to be discharged, judgment must be entered accordingly. The judgment must be signed by the judge and entered by the clerk.

Fed.R.Crim.P. 32(d)(1).

■ We agree that it makes sense to define "formal judgment of guilt" by reference to Rule 32(d)(1)'s definition of "judgment of conviction." Therefore, for the purposes of the INA, a conviction occurs when either (1) a "formal judgment of guilt of the alien [is] entered by a court," 8 U.S.C. § 1101(a)(48)(A), (and such a judgment must "set forth the plea, verdict or finding, the adjudication, and the sentence," Fed R.Crim. P. 32(d)(1)); or (2) "a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt" and "the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed." 8 U.S.C. § 1101(a)(48)(A)(i) & (ii).

■ A jury found Perez guilty on a conspiracy charge ·in January 1997. He was not sentenced until June 1997. After sentencing, the Court filed a judgment captioned "Judgment In A Criminal Case," which is dated June 24, 1997. We are satisfied that under IIRIRA's definition, Perez was convicted, at the earliest, when the Court sentenced Perez in June 1997. That means that Perez was convicted after April 1, 1997, the effective date of IIRIRAS 304(b), the section that repealed INA § 212(c).

We disagree with Perez's contention that *St. Cyr* requires us to grant the relief he seeks notwithstanding the fact that he was convicted after the repeal of § 212(c). The present case is distinguishable from *St. Cyr*. Unlike IIRIRA § 304(b), the section that the *St. Cyr* Court found to be ambiguous regarding Congress's intent to apply it retroactively, IIRIRA § 322(c) shows Congress's clear intent to apply § 322 retroactively. Section 322 states that the section's new definitions "shall apply to convictions and sentences entered before, on, or after the date of the enactment of this Act." Therefore, Perez's conviction occurred after the effective date of the repeal of former INA § 212(c). In contrast, the defendant's conviction in *St. Cyr* occurred while § 212(c) was still in effect. Therefore, Perez's reliance on *St. Cyr* is inapposite.

In sum, Congress, by evincing a clear intent to change retroactively the definition of "conviction" in the INA, removed the possibility of § 212(c) relief for aliens who were convicted after the April 1, 1997 repeal of former INA § 212(c). The order of the District Court will therefore be affirmed.