

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-27-2006

# Ahdab v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-2948

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Ahdab v. Atty Gen USA" (2006). *2006 Decisions.* Paper 689.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/689

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS

FOR THE THIRD CIRCUIT

_____

NO. 05-2948

_____

DAVID FRANCIS AHDAB,

Petitioner

v.

ALBERTO R. GONZALES, ATTORNEY GENERAL OF THE UNITED

STATES,

Respondent

_____

PETITION FOR REVIEW OF A DECISION OF

THE BOARD OF IMMIGRATION APPEALS

Agency No. A90-238-152

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)

May 19, 2006

BEFORE: McKEE and STAPLETON, <u>Circuit Judges,</u>

and McCLURE,[*] <u>District Judge</u>

(Opinion Filed: July 27, 2006)

_____

OPINION OF THE COURT

_____

McCLURE, <u>District Judge</u>:

David Francis Ahdab petitions pursuant to 8 U.S.C. § 1252(a), for review of a May 9, 2005 order of the Board of Immigration Appeals ("BIA"), upholding a November 1, 2004 ruling by an Immigration Judge ("IJ") ordering Ahdab removed from the United States (a) as an alien convicted of an aggravated felony, 8 U.S.C. § 1227(a)(2)(A)(iii), (b) as an alien convicted any time after admission of a law involving the use or possession of a firearm, 8 U.S.C. § 1227(a)(2)(C), and (c) as an alien convicted of a crime involving moral turpitude committed within 5 years after admission for which a sentence of one year or more may be imposed, 8 U.S.C. § 1227(a)(2)(A)(i). The BIA upheld the IJ's denial of Ahdab's application for adjustment of status, the denial of his application for cancellation of removal, and the denial of a waiver of removal under the former § 212(c) of the Immigration and Nationality Act ("INA").

Ahdab argues that the BIA erred in finding him ineligible, as a matter of law, for discretionary relief from removal under the former § 212(c) of the INA.

_____

[*]Hon. James F. McClure, Jr., United States District Judge for the Middle District of Pennsylvania, sitting by designation.

Ahdab asserts that the BIA erred in its determination that first-degree manslaughter under section 125.20(1) of the New York Penal Law was a crime of violence as defined in 18 U.S.C. § 16(b) and an aggravated felony under INA § 101(a)(43)(F). Finally, Ahdab argues that the BIA incorrectly determined the date of his admission into the United States. For the reasons provided below, we deny Ahdab's petition.

**DISCUSSION:**

## A. Jurisdiction and Standard of Review

Federal courts lack jurisdiction to review final orders of removal based on an alien's conviction for an aggravated felony. 8 U.S.C. § 1252(a)(2)(C). Our jurisdiction is retained, nevertheless, to review "constitutional claims or questions of law raised upon a petition for review." 8 U.S.C. § 1252(a)(2)(D).

Purely legal questions are reviewed de novo. Kamara v. Att'y Gen. of the U.S., 420 F.3d 202, 211 (3d Cir. 2005). Substantial deference is given to the BIA's construction of the INA, because it is a statute that the agency is charged with administering. See Acosta v. Ashcroft, 341 F.3d 218, 222 (3d Cir. 2003) (citing INS v. Aguirre-Aguirre, 526 U.S. 415, 424-25 (1999)). Nevertheless, we owe no deference to the BIA's interpretation of state and federal criminal laws, because the agency is not charged with the administration of criminal laws. Therefore whether the offense of first-degree manslaughter in violation of section 125.20 of the New York Penal Law constitutes an aggravated felony under the INA is a purely legal question subject to de novo review. See Valansi v. Ashcroft, 278 F.3d 203, 207 (3d Cir. 2002) (applying de novo review to determine whether embezzlement of bank funds in violation of 18 U.S.C. § 656 constitutes an aggravated felony under the INA).

## B. Facts & Procedural History

Ahdab is a native and citizen of Ghana who originally entered the United States in 1978 on an unknown date at an unknown place. On February 17, 1989,

3

Ahdab was granted an adjustment of his status to lawful permanent resident.

On May 3, 1991, Ahdab was convicted in a New York state court of an offence of criminal possession of a weapon in the second degree, to wit, a pistol, in violation of section 265.03 of the New York Penal Law and sentenced to a term of imprisonment of at least one year. Shortly thereafter, on November 19, 1991, Ahdab was convicted by guilty plea in a New York state court of first-degree manslaughter in violation of section 125.20 of the New York Penal Law. The Third Count of Ahdab's indictment charged him with first-degree manslaughter by charging that Ahdab "with the intent to cause serious physical injury to William O'Connell, caused the death of William O'Connell by stabbing William O'Connell with a dangerous instrument, to wit: a knife." (Administrative R. at 111.) The offense took place on November 18, 1989. Ahdab was sentenced to a term of imprisonment of six to eighteen years and was released from prison in February 2003, having served well over five years for his manslaughter conviction.

On the basis of his May 1991 weapons conviction, on April 26, 2004, the Department of Homeland Security ("DHS") issued a Notice to Appear charging Ahdab with being removable (a) under INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), as an alien convicted of an aggravated felony as defined in section 101(a)(43)(F), a crime of violence for which the term of imprisonment is at least one year, (b) under INA § 237(a)(2)(C), 8 U.S.C. § 1227(a)(2)(C), as an alien convicted any time after admission of a law involving the use or possession of a firearm, and (c) under INA § 237(a)(2)(A)(i), 8 U.S.C. § 1227(a)(2)(A)(i), as an alien convicted of a crime involving moral turpitude committed within 5 years after admission for which a sentence of one year or more may be imposed. On June 10, 2004, the DHS issued a Form I-261 Notice of Additional Charges lodging the additional factual allegation of Ahdab's November 1991 manslaughter conviction.

On July 19, 2004, Ahdab appeared before an IJ. At that time Ahdab admitted the factual allegations in the Notice to Appear, conceded he was removable for having committed a firearms offense, but denied that he was removable for having committed an aggravated felony and for having committed a crime involving moral turpitude within five years of entry. Following that hearing he applied for a waiver of deportation under former section 212(c) of the INA, 8 U.S.C. § 1182(c) (repealed 1996), cancellation of removal, adjustment of status, and a waiver of inadmissibility under section 212(h) of the INA, 8 U.S.C. § 1182(h). The DHS filed a motion to pretermit Ahdab's applications for relief based on a disqualifying aggravated felony, i.e., the 1991 manslaughter conviction, for which he served more than five years imprisonment.

On November 1, 2004, the IJ found that Ahdab was removable as charged and granted the DHS's motion to pretermit his applications for relief. The IJ found that Ahdab's 1991 manslaughter conviction constituted an aggravated felony as defined by INA § 101(a)(43)(F), rendering him ineligible for any relief.

On May 9, 2005, the Board of Immigration Appeals ("BIA") affirmed the decision of the IJ for the reasons set forth by the IJ and those set forth in its own opinion.

**ANALYSIS:**

**A. First-Degree Manslaughter in New York is a Crime of Violence**

Ahdab argues that first-degree manslaughter under New York law is not a "crime of violence" because "it does not have as an element the use, attempted use or threatened use of physical force" nor does it involve a "substantial risk that physical force . . . may be used." (Petitioner's Br. at 5.) In 2004, the BIA held that first-degree manslaughter under subsection (1) or (2) of New York Penal Law § 125.20 is a "crime of violence" under 18 U.S.C. § 16(b) and therefore an aggravated felony under 8 U.S.C. § 1101(a)(43)(F). Matter of Vargas-Sarmiento, 23 I. & N. Dec. 651, 654 (BIA 2004). Petitioner urges us to reject the reasoning

5

advanced in <u>Vargas-Sarmiento</u>, but we decline the opportunity.

Shortly before oral argument the Second Circuit affirmed <u>Vargas-Sarmiento</u> in an extensive opinion, holding that first-degree manslaughter under either subsection (1) or (2) of New York Penal Law § 125.20 is a "crime of violence" under 18 U.S.C. § 16(b) and therefore an aggravated felony under 8 U.S.C. § 1101(a)(43)(F). <u>Vargas-Sarmiento v. U.S. Dep't of Justice</u>, 448 F.3d 159, 168-74 (2d Cir. 2006). For all the reasons set forth in that thorough and well-reasoned opinion we also hold that first-degree manslaughter under subsection (1) or (2) of the New York Penal Law § 125.20 is a "crime of violence" under 18 U.S.C. § 16(b).

### B. Retroactive Application of IIRIRA Section 321(b)

In his initial petition, Ahdab argues that he should be eligible for relief because his manslaughter offense occurred before the enactment of the Immigration and Nationality Act of 1990 ("IMMACT") and section 501(a)(3) of IMMACT, the provision defining aggravated felony in that Act, applied only to offenses committed on or after the date of the enactment of the Act. IMMACT Section 501(b). Respondent's brief correctly notes that the prospective language petitioner relies upon in IMMACT Section 501(b) has since been supplanted by IIRIRA section 321(b). Congress was explicit in making retroactive the definition of an aggravated felony under section 321(b) of IIRIRA. Codified as the last sentence defining an "aggravated felony," the provision directs that "[n]otwithstanding any other provision of law (including any effective date), the term applies regardless of whether the conviction was entered before, on, or after September 30, 1996." 8 U.S.C. § 1101(a)(43). Respondent also argues that Ahdab has failed to address and therefore has waived any challenge to the BIA's application of 8 C.F.R. § 1212.3(f)(4)(I), governing eligibility for 212(c) waivers.

In response petitioner asserts that the retroactive application of the aggravated felony provision is unconstitutional because it violates his "due

6

process right to fair notice." (Petitioner's Reply Br. at 8.) Petitioner asserts that if he "had knowledge of IMMACT [sic] and its effect on his criminal case he would have conformed his plea/and or his trial accordingly so as not to have acquired the expectation of being eligible for 212(c) relief." (Id.)

We determine the retroactive reach of a statute by applying the "two-step process" described in Landgraf v. U.S.I. Film Products, 511 U.S. 244 (1994). Perez v. Elwood, 294 F.3d 552, 558 (3d Cir. 2002). "In the first step, the Court asks whether Congress has expressly prescribed the statute's proper reach." Id. (quoting Landgraf). "The standard for finding such unambiguous direction is a demanding one" as "cases where this Court has found truly 'retroactive' effect adequately authorized by statute have involved statutory language that was so clear that it could sustain only one interpretation." St. Cyr, 533 U.S. at 316-17.

In INS v. St. Cyr, 533 U.S. 289 (2001), the Supreme Court compared the provisions of IIRIRA repealing § 212(c) relief with § 321(b) to provide an example by contrast of how Congress could unmistakably indicate the intent to give retroactive effect to legislation. *Id.* at 318-320. The Court found that § 321(b)'s instruction that "the definition of aggravated felony . . . applies with respect to convictions . . . entered before, on or after the statute's enactment date" evinced "Congress' willingness . . . to indicate unambiguously its intention to apply specific provisions retroactively." Id. at 320. In Perez, we drew from the St. Cyr Court's observation to find that § 322 of IIRIRA, which amended the definitions of "conviction" and "term of imprisonment," clearly expressed congressional intent to apply the provision retroactively by employing language identical to that used in § 321(b):

> "IIRIRA . . . states that the definitional amendments in that section
> 'shall apply to convictions and sentences entered before, on, or after
> the date of the enactment of this Act.' In our view, this statement
> evinces a clear congressional intent to apply the statute retroactively."

7

Perez, 294 F.3d at 561.

Given the discussion in St. Cyr, it is not surprising that other Courts of Appeals have reached the conclusion that Congress intended the aggravated felony definition to apply retroactively without regard to when the offense was committed. See Aragon-Ayon v. INS, 206 F.3d 847, 853 (9th Cir. 2000) ("Congress intended the 1996 amendments to make the aggravated felony definition apply retroactively to all defined offenses *whenever committed*.") (emphasis added); Flores- Leon v. INS, 272 F.3d 433, 439 (7th Cir. 2001) ("Section 321 of IIRIRA contains a clear and express directive from Congress that the amended definition of "aggravated felony" should be applied to any and all criminal violations . . . regardless of *whether they were committed* before or after the amended definition went into effect.") (emphasis added). We, too, conclude that the definition of "aggravated felony" applies retroactively and supplants prior versions of the Act that may have delineated between felonies based on the timing of those offenses.

While we generally presume Congress does not intend to give legislation retroactive effect, when Congress does express such intent we give that statute its intended effect to the constitutional limits. See Landgraf, 511 U.S. at 267 ("Absent a violation of one of [the] specific provisions [of the Constitution], the potential unfairness of retroactive civil legislation is not a sufficient reason for a court to fail to give a statute its intended scope."); Perez, 294 F.3d at 558 ("[I]f Congress speaks clearly in saying that it intends for a civil statute to apply retroactively, a court must effectuate Congress's intent, absent a constitutional violation.").

Ahdab asserts in his reply brief that his "due process rights to fair notice" were violated by the application of IRRIRA's definition of aggravated felony. (Petitioner's Reply Br. at 8.) Ahdab pled guilty in 1991 to a crime that would cause him to lose eligibility for 212(c) relief in 1996. "The Due Process Clause . .

8

. protects the interests in fair notice and repose that may be compromised by retroactive legislation; a justification sufficient to validate a statute's prospective application under the Clause 'may not suffice' to warrant its retroactive application." Landgraf, 511 U.S. at 266 (quoting Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 17 (1976)). Nevertheless, a legislature, consistent with the Due Process Clause, may alter rights and responsibilities retrospectively and thereby frustrate settled expectations so long as it expressly so provides and has a rational basis for the retrospective aspect of its legislation. General Motors Corp. v. Romein, 503 U.S. 181, 191 (1992); Pension Ben. Guar. Corp. v. R.A. Gray Co., 467 U.S. 717, 730 (1984); Pinho v. INS, 249 F.3d 183, 189 (3d Cir. 2001). Congress had a rational basis for drafting a new definition of aggravated felonies that applied both prospectively and retroactively. We agree with the United States Court of Appeals for the Second Circuit when it held that, "Congress has a legitimate interest in protecting society from the commission of aggravated felonies . . . and legislation that deports aliens who presently commit or who have committed those acts in the past is a rational means of furthering that interest." Kuhali v. Reno, 266 F.3d 93, 111 (2d Cir. 2001) (citing Hamama v. INS, 78 F.3d 233, 236 (6th Cir. 1996)). But cf. United States v. Ubaldo-Figueroa, 364 F.3d 1042, 1051-56 (9th Cir. 2004) (Pregerson, J.) (suggesting that alien established "plausible claim" that § 321 may not be applied retroactively to establish that alien was prejudiced by IJ's failure to inform him that he could appeal his removal order). Applying section 321's definition of aggravated felony retroactively to include Ahdab does not offend the Due Process Clause.

To the extent Ahdab advances his notice argument under the Ex Post Facto Clause, the rights protected under this clause are not violated here. See Perez, 294 F.3d at 557 ("Perez contends that it is unconstitutional for Congress to change the consequences of a crime for purposes of the immigration statutes after the date of the commission of the criminal acts. This argument appears to derive from the *ex*

9

*post facto* clause, but such an argument is not available to Perez because deportation statutes are civil in nature."). Application of the statutory definition of the term "aggravated felony" to retroactively include Ahdab's offense after his guilty plea presents no constitutional problem. The BIA did not err or violate the constitution by refusing Ahdab eligibility for § 212(c) relief.

**CONCLUSION:**

Ahdab's first-degree manslaughter conviction was an aggravated felony for which he served more than five years. Ahdab's application for 212(c) relief was submitted after the enactment of IMMACT. Therefore, he is not eligible for section 212(c) relief. See Scheidemann v. I.N.S., 83 F.3d 1517, 1525-26 & n.12 (3d Cir. 1996). Because we find that Ahdab was convicted of an aggravated felony and is ineligible for relief under 212(c), we need not address his argument regarding his date of admission. For the foregoing reasons, we will deny the petition for review.