Murali Krishna PONNAPULA
Petitioner

v.

John ASHCROFT, et al., Respondents

No. Civ. 1:CV–02–1214.

United States District Court,
M.D. Pennsylvania.

Dec. 10, 2002.

Alexander E. Eisemann, South Salem, NY, for Petitioner.

Daryl F. Bloom U.S. Attorney's Office, Harrisburg, PA, for Respondents.

## *MEMORANDUM*

RAMBO, District Judge.

Before the court is Petitioner, Murali Ponnapula's, petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 *et seq.* Petitioner challenges the lawfulness of his final order of removal from the United States. Specifically, Petitioner (1) challenges the Immigration Court and Board of Immigration Appeals's retroactive application of the 1996 amendments to the Immigration and Nationality Act[1] ("INA"), (2) seeks a ruling declaring him eligible to seek relief from removal under former § 212(c) of the INA, *see* 8 U.S.C. § 1182(c) (1994)[2] (hereinafter, "former § 212(c)"), (3) seeks a ruling declaring him eligible for relief under § 212(h) of the INA, *see* 8 U.S.C. § 1182(h)[3] · (hereinafter " § 212(h)"), and (4) seeks a ruling ordering the Immigration and Naturalization Service ("INS") to conduct an individualized bond hearing. The parties have fully briefed the issue and presented oral argument. The matter is now ripe for disposition.

1. The 1996 Amendments to the INA were enacted by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1241 *et seq.* (1006) and the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub.L. No. 104–208, 110 Stat. 3009–546 *et seq.* (1996).

2. 8 U.S.C. § 1182(c) (1994) states in relevant part: "Aliens admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General...." This provision, while literally only applicable to exclusion proceedings, has been interpreted by the Board of Immigration Appeals to authorize any permanent resident alien with a "lawful unrelinquished domicile of seven consecutive years" to apply for a discretionary waiver of deportation. *Matter of Silva,* 16 I. & N. Dec. 26, 30 (BIA 1976); *see also, INS v. St. Cyr,* 533 U.S. 289, 295, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001). "If relief is granted, the deportation proceeding is terminated and the alien remains a permanent resident." 533 U.S. at 295, 121 S.Ct. 2271.

3. 8 U.S.C. § 1182(h) provides in relevant part:

> The Attorney General may, in his discretion, waive the [inadmissibility and or the deportability of an alien] if—
> (1)(A)
>
> .    .    .    .    .
>
> (B) in the case of an immigrant who is the spouse, parent, son, or daughter of a citizen of the United States or an alien lawfully admitted for permanent residence if it is established to the satisfaction of the Attorney General that the alien's denial of admission would result in extreme hardship to the United States citizen or lawfully resident spouse, parent, son, or daughter of such alien; and (2) the Attorney General, in his discretion, and pursuant to such terms, conditions and procedures as he may by regulations prescribe, has consented to the alien's applying or reapplying for a visa for admission to the United States or adjustment of status.
>
> 8 U.S.C. § 1182(h)(1)(B) and (2).

## I. Background

### A. Factual and Procedural Background

Petitioner is a native and citizen of Pakistan who was admitted to the United States as a nonimmigrant on September 4, 1983, and was granted lawful permanent resident status ("LPR status") on January 26, 1986. (*In re Ponnapula,* May 22, 2001 BIA decision at 1 [hereinafter "BIA decision"].) In 1993, a New York State grand jury, sitting in Manhattan, indicted Petitioner, along with several other defendants, for grand larceny in the first degree, *see* N.Y. Penal Law § 155.42,[4] and for falsifying business records in the first degree, *see id.* § 175.10.[5] (Decl. of Alexander E. Eisemann in Supp. of Mot. for Temp. Restraining Order and Order to Show Cause at 2, ¶ 3 [hereinafter "Eisemann Declaration"].) Over the next year, Petitioner and the Manhattan District Attorney's Office engaged in plea negotiations. (*Id.*)

At one point during his trial, the District Attorney's office offered to allow petitioner to plead guilty to a misdemeanor with a probationary sentence. (*Id.* at ¶ 4.) Petitioner considered the offer and immigration consequences of pleading guilty versus going to trial. Petitioner's counsel advised him that, if convicted after trial, he would likely receive a sentence of less than five years imprisonment. (*Id.*) Petitioner realized that even if he were convicted of a felony after trial, he would still likely be eligible for hardship relief from deportation pursuant to 8 U.S.C. § 1182(c) (1994). (*Id.*) Based on this information, Petitioner decided to turn down the plea offer and instead go to trial. On December 20, 1994, Petitioner was convicted in the Supreme Court of the State of New York for grand larceny in the first degree and was sentenced to an indeterminate term of imprisonment with a minimum of one year and a maximum of three years.[6] BIA Decision at 1.

---

4. N.Y. Penal Law § 155.42 states: "A person is guilty of grand larceny in the first degree when he steals property and when the value of the property exceeds one million dollars. Grand larceny in the first degree is a class B felony."

5. N.Y. Penal Law § 175.10 states: "A person is guilty of falsifying business records in the first degree when he commits the crime of falsifying business records in the second degree, and when his intent to defraud includes an intent to commit another crime or to aid or conceal the commission thereof. Falsifying business records in the first degree is a class E felony."

6. Petitioner's date of conviction is somewhat murky. On December 20, 1994, he was found guilty by a New York State jury for one count of grand larceny. On March 18, 1997, after a motion by Petitioner/Defendant, the State trial judge vacated the guilty verdict as contrary to the weight of the evidence. The State subsequently appealed. On or about March 18, 1997, the New York State Appel-

late Division, First Department, reversed the trial judge's vacatur, reinstated the verdict, and remitted the matter to the trial judge for sentencing. *See People v. Ponnapula,* 229 A.D.2d 257, 655 N.Y.S.2d 750, 760 (N.Y.App. Div.1997). On July 8, 1997, Petitioner was sentenced in Supreme Court, New York County, to an indeterminate period of incarceration of one to three years. (Gov. Memo. in Opp. to Pet. at 4.) Thus, technically, Petitioner's date of conviction is July 8, 1997; three months after the effective date of IIRIRA.

According to the Third Circuit's recent case, *Perez v. Elwood,* 294 F.3d 552 (3d Cir. 2002), the fact that Petitioner's conviction date technically occurred after the effective date of IIRIRA should make him ineligible for relief under former § 212(c). *See id.* at 561 ("Congress, by evincing clear intent to change retroactively the definition of 'conviction' in the INA, removed the possibility of § 212(c) relief for aliens who were convicted after the April 1, 1997 repeal of former INA § 212(c).") However, in the instant case, Respondents and Petitioner have stipulated that Petition-

On October 4, 2000, the INS issued a Notice to Appear charging that Petitioner was subject to removal pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii), as an alien who has been convicted of an aggravated felony as defined in 8 U.S.C. § 1101(a)(43); namely a theft offense for which the term of imprisonment was at least one year. (Gov. Mem. in Opp. to Pet. at 4, Exhibit A at 24–26.) On January 8, 2001, an immigration judge ordered Petitioner removed from the United States and denied his application for relief under former § 212(c) of the INA. The Immigration Judge found that Petitioner was not within the purview of the holding in *St. Cyr v. INS*, 229 F.3d 406 (2d Cir.2000), *aff'd* by 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347.[7] BIA Decision at 1. Petitioner appealed the Immigration Judge's finding to the Board of Immigration Appeals ("BIA"). On May 22, 2001, the BIA dismissed the appeal and sustained the order of removal, reasoning that *St. Cyr* applied only to those individuals who had pleaded guilty, but not to individuals who had gone to trial. BIA Decision at 1–2.

On May 7, 2002, following two years of incarceration on the larceny charge that underlies his current final order of removal, the New York State Department of Correctional Services released Petitioner. (Petition at 2, ¶ 3.) Upon his release, the INS immediately took Petitioner into custody and transferred him to the Pike County Jail, in Pike County, Pennsylvania. (*Id.* at ¶ 4.) On May 8, 2002, Petitioner filed the instant Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2241, in the United States District Court for the Southern District of New York. The matter was subsequently transferred to the Eastern District of Pennsylvania and, ultimately, to this court, where the petition was filed on July 16, 2002.

On July 29, 2002, the court ordered Respondents to show cause why the Petition should not be granted. Respondents filed their response to the show cause order on August 19, 2002. On September 13, 2002, Petitioner filed a reply to Respondents show cause order. The court held oral argument on November 7, 2002. The matter is now ripe for disposition.

### B. Background of Former § 212(c)

Under the statutory regime in place prior to 1996, a lawful permanent resident convicted of a deportable offense was statutorily eligible to seek discretionary relief from deportation. *See* 8 U.S.C. § 1182(c) (1994). However, in 1996, Congress amended the INA through enactment of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1241 *et seq.* (1006) and the Illegal Immigration Reform and Immi-

---

er's conviction date for the purposes of these proceedings is December 20, 1994, the date of the guilty verdict. In his decision denying Petitioner relief, the Immigration Judge found that "on January 8[th], 2001 the Immigration Service and counsel for respondent stipulated to an amendment to the Notice to Appear ... showing the respondent having been convicted December 20[th], 1994." *In re Ponnapula,* Oral Decision of the Immigration Judge, January 8, 2001, Hearing Transcript at 2. Moreover, the Board of Immigration Appeals found that "on December 20, 1994, the respondent was convicted" in New York State Court for grand larceny. BIA Decision at 1. At no time in any of their briefs, nor at oral argument, did Respondents challenge Petitioner's statements that his conviction occurred on December 20, 1994. Thus, the record before the court indicates that, for the purposes of the relevant immigration proceedings, Petitioner's conviction date is December 20, 1994. Consequently, while this court recognizes the binding effect of the Third Circuit's opinion in *Perez,* it finds *Perez* to be inapplicable under these circumstances.

7. Petitioner's hearing before the Immigration Judge occurred before the Supreme Court affirmed the Second Circuit's decision.

grant Responsibility Act ("IIRIRA"), Pub.L. No. 104–208, 110 Stat. 3009–546 *et seq.* (1996). Pre–IIRIRA, only those who had been convicted—either by plea or at trial—of a crime that fell under the definition of an "aggravated felony," *see* 8 U.S.C. § 1101(a)(43) (1994), and who had served a prison term of at least five years were statutorily ineligible for discretionary relief. *See* 8 U.S.C. § 1182(c) (1994). Even a defendant convicted of an aggravated felony and sentenced to five or more years imprisonment might have maintained eligibility for § 212(c) relief, provided that he had not served five years of his sentence at the time of his removal hearing. *See Matter of Ramirez–Somera,* 20 I & N Dec. 564, 566 (BIA 1992) (finding an immigrant eligible for § 212(c) relief despite having been sentenced to a fifteen year prison term because he had not yet served five years of his sentence); *see also United States v. Ben Zvi,* 242 F.3d 89, 99 (2d Cir.2001) (stating that the five year eligibility bar "turns not on the sentence imposed but on the period of actual incarceration"); *Greenidge v. INS,* 204 F.Supp.2d 594, 600 (S.D.N.Y.2001). Thus, the relief was available to a large number of immigrant defendants, regardless of the sentence ultimately imposed.

The AEDPA and IIRIRA significantly limit the cases where discretionary relief from removal can be sought. They preclude an alien, who has been ordered removed from the United States because of a conviction that qualifies as an aggravated felony, from applying for discretionary relief from removal. *See e.g., St. Cyr,* 533

U.S. at 325, 121 S.Ct. 2271 (stating that IIRIRA eliminated any possibility of § 212(c) relief).

Petitioner's conviction for a fraud offense—which made him deportable and ineligible under the AEDPA and IIRIRA to apply for discretionary relief-occurred on December 20, 1994, approximately two and one half years before Congress enacted these statutes. However, Petitioner's removal proceedings were commenced on October 4, 2000, almost three and one half years after the enactment of the AEDPA and IIRIRA.[8] Consequently, Petitioner argues that applying AEDPA and IIRIRA to bar his eligibility to seek discretionary relief would have an impermissible retroactive effect.

### C.  *The Supreme Court's Decision in St. Cyr*

In *St. Cyr,* the Supreme Court held that discretionary relief under former § 212(c) "remains available for aliens ... whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect."[9] 533 U.S. at 326, 121 S.Ct. 2271. In reaching this conclusion, the Court analyzed whether applying the repeal to petitioners, like St. Cyr, who pled guilty before the law's enactment, would have an impermissible retroactive effect. *Id.* at 315, 121 S.Ct. 2271. The Court applied its two-part retroactivity test set forth in *Landgraf v. USI Film Products,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), and its progeny.[10]

---

**8.**   IIRIRA became effective on April 1, 1997.

**9.**   *St. Cyr,* also held that Congress had not repealed general habeas jurisdiction under 8 U.S.C. § 2241 in cases such as this one. *See* 533 U.S. at 314, 121 S.Ct. 2271.

**10.**   The Court in *St. Cyr,* stated that the *Landgraf* test has two parts. "The first step in determining whether a statute has an impermissible retroactive effect is to ascertain whether Congress has directed with the requisite clarity that the law be applied retroactively." 533 U.S. at 516, 121 S.Ct. 2381. The second step requires an analysis of "whether

Applying the first step of the *Landgraf* test, the Court concluded that Congress had not unambiguously decided the issue of § 304 of IIRIRA's retroactive application to pre-enactment convictions. *Id.* at 320, 121 S.Ct. 2271. Because Congress did not express an intent to apply the repeal retroactively, the Court turned to the second step of the retroactivity analysis— whether the statute would have an impermissible retroactive effect if it applied to immigrants who pled guilty prior to IIRIRA's enactment. The Court stated that its duty was to make a "commonsense, functional judgment about whether the new provision attaches new legal consequences to events completed before its enactment" guided by "familiar considerations of fair notice, reasonable reliance, and settled expectations." *Id.* at 321, 121 S.Ct. 2271.

In making its judgment, the Court noted that "preserving the possibility of [§ 212(c) ] relief" is one of the main considerations for an immigrant in deciding "whether to accept a plea offer or instead go to trial." *Id.* at 323, 121 S.Ct. 2271. The Court also noted that immigrants are "acutely aware" of the immigration consequences of their decisions. *Id.* at 322, 121 S.Ct. 2271. Because applying § 304 of IIRIRA to petitioners, like St. Cyr, who accepted a plea with knowledge that § 212(c) relief would be available, would upset their settled expectations, the Court held that applying the repeal would be impermissibly retroactive. *Id.* at 325, 121 S.Ct. 2271.

In the instant case, given that the court is interpreting § 304 of IIRIRA, it is bound by the Supreme Court's finding in *St. Cyr* that Congress "did not definitively decide the issue of [IIRIRA's] retroactive application to pre-enactment convictions" *Id.* at 320, 121 S.Ct. 2271. Thus, the court

is presented with the very narrow legal question of whether it would be contrary to "familiar considerations of fair notice, reasonable reliance, and settled expectations" to apply IIRIRA retroactively to Petitioner. *Martin v. Hadix,* 527 U.S. 343, 358, 119 S.Ct. 1998, 144 L.Ed.2d 347 (1999). In other words, does the fact that Petitioner was convicted at trial, rather than by guilty plea, change the result dictated by *St. Cyr?* Given the factual underpinnings of this case, the court concludes that it does not.

## II. *Discussion*

Petitioner argues that under the reasoning of the Supreme Court's decision in *St. Cyr,* he is eligible to seek relief from deportation under former § 212(c) of the INA, even though, unlike the petitioner in *St. Cyr,* he was convicted after a trial, rather than by guilty plea. Petitioner also argues that his Equal Protection rights under the Fifth Amendment to the United States Constitution were violated when the Immigration Judge, and subsequently the BIA, denied him the opportunity to seek relief under § 212(h) of the INA. Finally, Petitioner argues that he should be granted an individualized bond hearing during the pendency of these proceedings.

Respondents contend that the Supreme Court explicitly limited its holding in *St. Cyr* to only those aliens who, in reliance on the availability of § 212(c) relief, pleaded guilty or *nolo contendre* to crimes that made them deportable. (Gov. Memo. in Opp. to Pet. at 3.) As to Petitioner's claim for relief under § 212(h), Respondents argue that the BIA correctly found that § 212(h) relief is not available to aliens, like Petitioner, who were previously admitted for lawful permanent residence and

depriving removable aliens of consideration for § 212(c) relief produces an impermissible

retroactive effect." *Id.* at 520, 121 S.Ct. 2381.

who were subsequently convicted of an aggravated felony. Furthermore, Respondents argue that denying Petitioner the right to seek relief under § 212(h) does not violate his equal protection rights because aliens, like Petitioner, who are lawful permanent residents are not similarly situated with non-lawful permanent residents. Moreover, Congress had a rational basis for making its distinctions. Finally, Respondents argue that Petitioner's request for bail should be denied because he has failed to exhaust his administrative remedies. (*Id.*)

For the reasons that follow, the court will grant in part, and deny in part, the instant petition for Writ of Habeas Corpus. The court will grant the petition only in so far as to remand the case to the Immigration Court and order that Petitioner be given an opportunity to present a claim for relief under former § 212(c). The court will further order the Immigration and Naturalization Service to conduct an individualized bond hearing to determine whether Petitioner is eligible to be released on bond pending the outcome of his § 212(c) hearing. The court will deny the petition in all other respects.

### A. *Petitioner's § 212(c) Claim*

■ *St. Cyr* established that Congress did not unmistakably indicate that it intended—or even considered whether—to apply its repeal of § 212(c) retroactively. 533 U.S. at 326, 121 S.Ct. 2271. This decision is binding upon the court in the instant matter. Because Congress has not spoken with the requisite clarity to apply IIRIRA retroactively, the next step in the process is to determine whether application of the statute "produces an impermissible retroactive effect." *Id.* at 320, 121 S.Ct. 2271. "If so, then in keeping with our traditional presumption against retroactivity, [the court] presumes that the stat-

ute does not apply to [the conduct at issue]." *Martin*, 527 U.S. at 352, 119 S.Ct. 1998 (internal quotation marks omitted). The court finds the facts of the instant case sufficiently analogous to St. Cyr. Elimination of any possibility of former § 212(c) relief by IIRIRA has an obvious and severe retroactive effect on persons like Petitioner who relied on settled expectations of the immigration laws in place at the time he turned down a plea bargain and decided to go to trial.

As the Supreme Court indicated, immigrants are "acutely aware" of immigration consequences when making critical decisions about their criminal case, including whether to plead or go to trial. *St. Cyr*, 533 U.S. at 322, 121 S.Ct. 2271. In the instant case, Petitioner declined an offer, in his criminal case, to plead guilty to a misdemeanor with a probationary sentence. (Pet. at 7, ¶ 19.) Had Petitioner accepted this offer, there would have been no immigration consequences because the conviction would not have constituted an "aggravated felony." *See* 8 U.S.C. § 1101(a)(43) (defining the term "aggravated felony"). However, Petitioner turned down the State's offer and proceeded to trial where he was subsequently convicted. A major factor in his decision not to accept the offer "was the lack of any distinction" for the purposes of § 212(c) relief between a misdemeanor and felony conviction. (Pet. at 7, ¶ 19.) Petitioner contends that had IIRIRA been in effect at the time he choose to go to trial, rather than plea, "he would have pleaded guilty to the misdemeanor and have avoided deportation." (*Id.*) Moreover, Petitioner contends that while criminal defendants who decide to fight a prosecution would "likely not litigate any more vigorously if they knew convictions carried adverse immigration consequences, defendants who turn down offers that carry no immigration consequences do make reasoned decisions

based on settled expectations about the immigration laws." (Pet. at 8, ¶ 21.)

Respondents argue that the Supreme Court "did not hold that application of the repeal of § 212(c) would be impermissible with respect to all criminal aliens; only those who pleaded guilty." (Gov. Memo in Opp. to Pet. at 23.) Furthermore, Respondents contend that because Petitioner "sought acquittal from the outset, he cannot show, as required, that the availability of section 212(c) relief affected his planning in any material way." (*Id.* at 24) (citing *St. Cyr*, 533 U.S. at 325, 121 S.Ct. 2271). Additionally, Respondents contend that because Petitioner "did not perform any act or give up any right in reliance," he does not meet the requirements set forth in *St Cyr.* (Asst. U.S. Atty. Bloom at Oral Arg., Tr. at 7, lines 23–24.) These requirements, according to Respondents, would include, not only a reliance on the well settled expectations of immigration law, but also a *quid pro quo* relationship between the alien and the Government. Respondents contend that the *quid pro quo* requires aliens to actually give up some right in exchange for pleading guilty, thus guaranteeing their deportability. (*See id.* at 8, lines 8–21.) In other words, by pleading guilty to a removable offense—and thus giving up their right to go to trial—aliens, like St. Cyr, guaranteed their removal from the United States in reliance on the continued availability of § 212(c) relief. While the existence of a *quid pro quo* likely played a role in the Supreme Court's analysis, this court finds Respondents reading of *St. Cyr* to be too narrow.

While the Supreme Court in *St. Cyr* noted that "plea agreements involve a *quid pro quo* between the criminal defendant and the government," these statements came within the context of the Court's discussion of the strong reliance interests that were present in that case. *See* 533 U.S. at 321–322, 121 S.Ct. 2271. Read in this context, these statements do not create an additional requirement necessary to establish a retroactive effect. Rather, they serve to highlight the "obvious and severe retroactive" effect of applying IIRIRA to aliens like St. Cyr. *Id.* at 325, 121 S.Ct. 2271. Thus, the court finds that *St. Cyr* does not state that a *quid pro quo* or a waiver of constitutional rights is required to establish an impermissible retroactive effect. Rather, the determination whether a particular statute acts retroactively "should be informed and guided by 'familiar considerations of fair notice, reasonable reliance, and settled expectations.'" *Martin*, 527 U.S. at 358, 119 S.Ct. 1998 (quoting *Landgraf*, 511 U.S. at 270, 114 S.Ct. 1483).

A defendant, who goes to trial believing that his opportunity to seek § 212(c) relief is secure, is as equally disrupted in his reasonable and settled expectations as is a defendant who accepts a plea believing it to confer such a benefit. Respondents point out that aliens like St. Cyr, who accept a plea, know exactly what affect the plea will have on their immigration status—they will in effect be "guaranteeing their deportability." (Asst. U.S. Atty. Bloom's St. at Oral Arg., Tr. at 8, line 19.) Whereas, with aliens like Petitioner, who go to trial, there is no guarantee of deportability, or guarantee of relief under § 212(c). In other words, Respondents argue, since Petitioner could have faced a sentence longer than five years upon his conviction at trial, his reliance on the availability of § 212(c) relief was speculative at best. The court finds this argument unpersuasive.

First, Petitioner relied on his counsel's advice that he would not be given more than five years imprisonment if he were convicted at trial. (Eisemann Decl. at 3,

¶ 4.) While it is true that such advice is not conclusive of the ultimate sentence, it is reasonable for a criminal defendant to trust the advice of his counsel in weighing the immigration consequences of his decision. Petitioner's counsel advised him that he would "in all likelihood, receive a sentence of only one to three years' imprisonment." (*Id.*) The fact that this turned out to be true, buttresses the court's conclusion that it was reasonable for Petitioner to rely on his counsel's advice in making his immigration decisions.

Second, and more importantly, however, case law before IIRIRA held that even an alien who received a sentence longer than five years might have maintained eligibility for § 212(c) relief, provided that the alien had not served five years of his sentence at the time of his removal hearing. *See Matter of Ramirez–Somera*, 1992 WL 301623, 20 I. & N. Dec. 564, 566 (BIA 1992) (holding that an immigrant defendant is eligible for § 212(c) relief despite having been sentenced to a fifteen year prison term because he had not yet served five years of the sentence). Thus, the fact that Petitioner could have received a sentence greater than five years upon his conviction, would not have, pre-IIRIRA, automatically foreclosed his eligibility for § 212(c) relief.

Finally, the fact that an alien, like St. Cyr, by accepting a plea, guaranteed his deportability is a factor to analyze in assessing his reliance on the state of immigration law. It is not, however, the *only* factor in the analysis. Rather, the relevant inquiry is whether Petitioner had settled expectations to which he conformed his conduct. *See St. Cyr*, 533 U.S. at 321, 121 S.Ct. 2271. Here, there can be no doubt that Petitioner conformed his conduct to match his settled expectations of immigration law. Petitioner was offered an opportunity to plead guilty to a misdemeanor which would have had no immigration consequences, but turned down the plea because "even if he were convicted of a felony after trial he would still be eligible for hardship relief from deportation pursuant to § 212(c)." (Eisemann Decl. at 3, ¶ 4.)

Respondents contend that Petitioner's decision to go to trial was based purely on criminal justice concerns—*i.e.*, the weight of the evidence and/or his belief in his own innocence—rather than the immigration consequences of his decision. (*See* Asst. U.S. Atty. Bloom's St. at Oral Arg., Tr. at 6, lines 12–14.) In part, Petitioner agrees that his concerns were penalogical rather than solely immigration. However, Petitioner argues that the reason why his concern was focused on the criminal penalties is that there wasn't a concern about the immigration consequences. In other words, "he knew that he had the availability of discretionary relief." (Eisemann's St. at Oral Arg., Tr. at 10, lines 20–23.) The court agrees with Petitioner. Given Petitioner's reliance on his counsel's advice that he would not receive a sentence greater than five years, he conformed his conduct—his decision to go to trial, rather than plead guilty—to his settled expectation that discretionary relief would be available in the event he were convicted.[11]

---

11. Moreover, Petitioner's reliance on his eligibility for relief under § 212(c) was reasonable. To qualify for former § 212(c) relief, an immigrant had to show, *inter alia*, that he (1) was a lawful permanent resident of the United States; (2) had an unrelinquished domicile of seven consecutive years; and (3) had not committed an aggravated felony for which he had served a term of imprisonment of at least five years. 8 U.S.C. § 1182(c) (1994); (*see also* Gov. Memo. in Opp. to Pet. at 16.) Petitioner meets all of these requirements. He is a lawful permanent resident. He has lived continuously in the United States for seven years. He was not sentenced to more than five years imprisonment and had supportive

Furthermore, there is no basis in IIRIRA for limiting *St. Cyr's* holding to the facts of that case, thereby providing relief only to persons convicted by plea, but not at trial. This is relevant because retroactivity analysis acts as a proxy for congressional intent where Congress has not unambiguously declared its intent to apply a statutory provision retroactively. *See Landgraf*, 511 U.S. at 272, 114 S.Ct. 1483; *see also Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 858 n. 3, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990) (Scalia, J, concurring) (stating that "the application of the presumption [against statutory retroactivity] ... seeks to ascertain the probable legislative intent"). There is no basis to conclude that Congress sought to distinguish between those immigrants who were convicted because they pled guilty, or those convicted after trial.

In IIRIRA, Congress legislated with respect to convictions—not trials or pleas. *See, e.g.*, 8 U.S.C. § 1227(a)(2) (defining deportable offenses with reference to convictions). While it is true that the Supreme Court, in *St. Cyr*, only addressed those aliens who were convicted after guilty pleas, it did so not because that group of aliens is the only group still eligible for discretionary relief. Rather, that was the factual scenario presented to the Court in that case. Under Respondents' approach, a defendant who pleads guilty to a particular deportable offense would have the right to seek § 212(c) relief; however, a defendant who, after weighing the immigration consequences, opts to go to trial and is convicted of an identical charge, would face mandatory deportation. It is inconceivable that Congress intended such a result.

Again, there is nothing in IIRIRA that unmistakably indicates that Congress wished to apply IIRIRA retroactively. In deciding not to accept the plea bargain offered, but instead to go to trial, Petitioner conformed his conduct to the settled expectation that § 212(c) relief would be available. Accordingly, the court finds that foreclosing § 212(c) relief to Petitioner would have an impermissible retroactive effect. Thus, § 212(c) relief remains available to Petitioner. The court will grant his petition for writ of habeas corpus in so far as to remand the case to the immigration court for a § 212(c) hearing.

**B.   *§ 212(h)***

Deportable aliens who are married to United States citizens can seek relief from deportation by applying to adjust their status to that of a permanent resident based on marriage. 8 U.S.C. § 1255. Under § 1255, the Attorney General may, in his discretion, adjust the status of an alien in removal proceedings to that of an alien lawfully admitted for permanent residence if (1) the alien applies for adjustment, (2) is immediately eligible to receive an immigrant visa at the time his application is filed, (3) is admissible to the United States for permanent residence, and (4) has an immigrant visa immediately available to him at the time the application is filed. *Id.* at § 1255(a).

Petitioner's spouse is a United States citizen. However, an alien is inadmissible if he has been convicted of a crime of moral turpitude. *See* 8 U.S.C. § 1182(a)(2)(A)(i)(I). Petitioner's conviction for first degree grand larceny constitutes a crime of moral turpitude. Thus, he cannot satisfy the second requirement of 8 U.S.C. § 1255(a). To cure his inadmissi-

---

factors such as family ties and evidence of hardship to his family if deported. (Eisem-

ann Declaration at 13, ¶ 27.)

bility, Petitioner applied for a waiver of inadmissibility pursuant to § 212(h) of the INA. *See* 8 U.S.C. § 1182(h).[12]

Under § 1182(h), the Attorney General, in his discretion, may waive an alien's inadmissibility for a crime of moral turpitude if the alien is a spouse, parent, or child of a United States citizen or permanent resident alien and can show that denial of admission would cause extreme hardship to the citizen or permanent resident. *Id.* at § 1182(h)(1)(B). Congress amended this waiver provision in 1996 to prohibit eligibility if an alien previously has been admitted as a permanent resident and then has either (a) been convicted of an aggravated felony, or (b) not resided in the United States for seven continuous years.[13] *Id.* at § 1182(h).

Petitioner argues that he is entitled to seek relief under § 1182(h) because denying him eligibility under this section would violate the equal protection component in the Fifth Amendment's Due Process Clause. Specifically, Petitioner argues that the statute makes an impermissible distinction because it treats lawful permanent residents and non-lawful permanent residents differently without a rational basis for its decision. Respondents argue that there is no equal protection violation because lawful permanent residents and non-lawful permanent residents are not similarly situated. *See Jankowski–Burczyk v. INS*, 291 F.3d 172, 176 (2d Cir.2002) (holding that lawful permanent residents and non-lawful permanent residents are not similarly situated).

While neither party mentioned so in their briefing or at oral argument, the Third Circuit Court of Appeals has recently ruled on this issue. In *De Leon–Reynoso v. Ashcroft*, 293 F.3d 633 (3d Cir.2002), the court applied a rational basis test and held that "[b]ecause Congress conceivably had good reasons to create the § 1182(h) distinction, we hold that the distinction survives rational basis scrutiny." *Id.* at 640. In reaching this holding, the Third Circuit found at least two rationales for the § 1182(h) distinction:

> First, Congress could have concluded that [lawful permanent residents] who commit crimes of moral turpitude, despite rights and privileges based on their status that illegal aliens do not share, are uniquely poor candidates for waiver. Second, [lawful permanent residents] with employment and family ties to the United States, who are still willing to commit serious crimes, are a high-

---

**12.** Section 212(h) only waives a ground of inadmissibility, not a ground of deportability. However, both lawful permanent residents and non-lawful permanent residents who are already present in the United States are able to apply for adjustment of status under 8 U.S.C. § 1255. Upon application, the "applicant is assimilated to the position of an alien outside the United States seeking entry as an immigrant." Charles Gordon *et al.*, Immigration Law and Procedure § 51.03[3] (rev. ed.2001); *see also In re Mendez–Moralez*, 1996 WL 227774, 21 I. & N. Dec. 296, 299 (BIA 1996); *Matter of Alarcon*, 20 I. & N. Dec. 557, 562 (BIA 1992). If the application is granted—which requires, among other things, that the alien be admissible to the United States for permanent residence—the adjustment of status effectively waives the ground of deport-

ability. *See Snajder v. INS*, 29 F.3d 1203, 1207 (7th Cir.1994); *see also Tibke v. INS*, 335 F.2d 42 (2d Cir.1964).

**13.** 8 U.S.C. § 1182(h) now states in relevant part:

> No waiver shall be granted ... in the case of an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if either since the date of such admission the alien has been convicted of an aggravated felony or the alien has not lawfully resided continuously in the United States for seven years immediately preceding the date of initiation of proceedings to remove him from the United States.

er risk for recidivism than [non-lawful permanent residents] who commit serious crimes but lack ties to the United States.

*Id.* (internal citations omitted).

In making this determination, the Third Circuit realized that such a rationale may not appear to be overwhelmingly persuasive, but it is sufficient to survive rationale basis review. The Third Circuit stated:

Although these two rationales do not command enthusiasm, they form a plausible justification for the distinction made by Congress.

. . . . .

Our holding that the § 1182(h) distinction survives rational basis scrutiny should not be mistaken for an endorsement of the policy. We urge Congress to reconsider the ramifications of entirely eliminating the Attorney General's discretion in this area. At times, pathetic, heart-wrenching pain for families and burdensome consequences for employers and taxpayers accompany removal proceedings.

. . . . .

Although the Congress's goal of expediting the removal of criminal aliens is understandable and even praiseworthy, denying the Attorney General of the United States the discretionary power to adjust the status of a lawful permanent alien who has committed a crime of moral turpitude, regardless of the circumstances of the crime and his familial conditions, can be harsh, self-defeating, and unwise.

*Id.*

This court shares the concerns of the Third Circuit. Making classifications such as those made in § 1182(h)—while conceivably rational, and thus constitutional—may have unintended consequences far greater than the benefits they bestow. For example, Petitioner's wife and children, who are United States citizens, will now become a single parent family. Whether they can sustain themselves or will become a burden on society is yet to be seen. Nonetheless, in light of the Third Circuit's holding in *De Leon–Reynoso*, the court finds that the BIA's decision finding Petitioner ineligible for relief under 8 U.S.C. § 1182(h) was not a violation of the equal protection component of the Fifth Amendment's Due Process clause. Accordingly, the court will deny the petition for writ of habeas corpus in so far as Petitioner requests relief related to 8 U.S.C. § 1182(h).

### C. *Petitioner's Bond Request*

In addition to requesting relief under 8 U.S.C. §§ 1182(c) and (h), Petitioner requested the court to grant preliminary relief and order the INS to release Petitioner on bond pending the disposition of the habeas petition on the merits. As the court has reached the merits of the habeas petition, that request will be deemed moot. Nonetheless, given that the court will grant Petitioner's writ of habeas corpus in so far as to remand the case to the Immigration Court for a § 212(c) hearing, it is also appropriate for Petitioner to receive an individualized bond hearing.

Respondents do not dispute that it is appropriate for Petitioner to receive a bond hearing at this juncture. At oral argument, Respondents' attorney stated that "if in fact the court does make a finding that [§ 212(c)] is impermissibly retroactive . . . the court can vacate the final decision [of the BIA]. . . . At that point, Petitioner, Mr. Ponnapula, would be eligible for bond." (Asst. U.S. Atty. Bloom's St. at Oral Arg., Tr. at 42, lines 10–14.) Here, the court has made a finding that § 212(c), as applied to aliens like Petitioner, is impermissibly retroactive. Consequently, the court will vacate that

portion of the BIA's opinion denying Petitioner an opportunity to seek § 212(c) relief.

Three recent decisions, one from the United States Supreme Court and two from the Third Circuit Court of Appeals, address the issue of whether a detained alien is entitled to a bond hearing. In 1999, the Third Circuit dealt with an alien who had received a final order of exclusion but was still in detention after four years because his native country would not accept him. *Chi Thon Ngo v. INS*, 192 F.3d 390 (3d. Cir.1999). Despite the fact that Ngo was an excludable alien rather than a deportable alien, the Third Circuit counseled that "when detention is prolonged, special care must be exercised so that confinement does not continue beyond the time when the original justifications for custody are no longer tenable." *Id.* at 398. The Third Circuit held that "measures must be taken to assess the risk of flight and danger to the community on a current basis" and that "grudging and perfunctory review is not enough to satisfy the due process right to liberty, even for aliens." *Id.*

In 2001, the Supreme Court examined the constitutionality of indefinite post-removal-order detention. Specifically, the case dealt with a former lawful permanent resident alien who had received a final order of deportation but remained in INS custody pursuant to 8 U.S.C. § 1231(a)(6) [14] because the Government was unable to effectuate the detainee's removal to another country. *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001). In that case, the Court construed the statute to limit post-removal-order detention to a period reasonably necessary to bring about the alien's removal, generally no more than six months. *Id.* at 701, 121 S.Ct. 2491. Recognizing that immigration detention implicates a fundamental liberty interest, the Court stated that a "statute permitting indefinite detention of an alien would raise a serious constitutional problem." *Id.*

In *Patel v. Zemski*, 275 F.3d 299 (3d. Cir.2001), the Third Circuit interpreted the Supreme Court's holding in *Zadvydas* and its holding in *Ngo* as applying to the case of a lawful permanent resident who was being detained pending a final order of removal. As a result of his conviction, the INS found Patel subject to mandatory detention under 8 U.S.C. § 1226(c), [15] thus precluding his right to bond. Patel filed a writ of habeas corpus contesting his detention. He claimed that his detention without any opportunity for individualized determination of his risk of flight or danger to the community violated both his substantive and procedural due process rights to be free from restraint of liberty. Examining Patel's detention in light of the

---

**14.** 8 U.S.C. § 1236(a)(b) states:

An alien ordered removed who is inadmissible under [8 U.S.C. § 1182], removable under section [8 U.S.C. § 1227(a)(1)(C), (a)(2), or (a)(4)] or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

**15.** 8 U.S.C. § 1226(c) states in relevant part:

The Attorney General shall take into custody any alien who—

· · · · ·

(B) is deportable by reason of having committed any offense covered in section [8 U.S.C. § 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D)]
when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

Supreme Court's recent decision in *Zadvydas*, the Third Circuit held that:

> Mandatory detention of aliens after they have been found subject to removal but who have not yet been ordered removed because they are pursuing their administrative remedies violates their due process rights unless they have been afforded the opportunity for an individualized hearing at which they can show that they do not pose a flight risk or danger to the community.

*Patel*, 275 F.3d at 314.

Because the court will grant Petitioner's habeas petition as to his § 212(c) claim, Petitioner will no longer be subject to a final order of removal. While he will still be removable, he will fall into the class of persons, like Patel, who have not yet been ordered removed because they are seeking administrative remedies, *i.e.*, a discretionary waiver of removal under former § 212(c) of the INA. Consequently, to deny petitioner an individualized hearing would be to deny him due process. Accordingly, the court will order the Immigration and Naturalization Service to conduct an individualized bond hearing to determine whether Petitioner poses a flight risk or a danger to the community.

## III. *Conclusion*

Because Petitioner conformed his conduct—his decision to go to trial, rather than plead guilty—to his settled expectation that discretionary relief would be available in the event he were convicted, applying IIRIRA to bar his eligibility for discretionary relief would have an impermissible retroactive effect. Accordingly, the court will grant Petitioner's habeas petition in so far as to remand the case back to the Immigration Court for the purposes of allowing petitioner to apply for discretionary relief under former § 212(c).

The court will deny Petitioner's habeas petition in all other respects, and will deny, as moot, his request for bond pending the outcome of these proceedings.

Nonetheless, in light of the due process implications of denying Petitioner an individualized bond hearing absent a final order of removal, the court will order the Immigration and Naturalization Service to conduct an individualized bond hearing to assess Petitioner's eligibility for bond during the pendency of his former § 212(c) proceedings. An appropriate order will issue.