PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No.  12-2007
_____

JORGE ROBERTO LUPERA-ESPINOZA,

Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA,

Respondent
_____

On Petition for Review from an
Order of the Board of Immigration Appeals
(Board No. A023-301-750)
Immigration Judge:  Hon. Walter A. Durling
_____

Argued February 13, 2013
Before:  HARDIMAN and ALDISERT, *Circuit Judges*.

and STARK[*], *District Judge*

(Filed:  May 28, 2013)

Gregory F. Laufer [Argued]
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019
        *Attorneys for Petitioner*

David V. Bernal
Lauren Fascett [Argued]
Eric H. Holder, Jr.
Thomas W. Hussey
John J. W. Inkeles
Jennifer P. Williams
United States Department of Justice
Office of Immigration Litigation, Civil Division
P.O. Box 878
Ben Franklin Station
Washington, DC 20044
        *Attorneys for Respondent*

Nancy Morawetz
Washington Square Legal Services, Inc.
Immigrant Rights Clinic
245 Sullivan Street

---

[*]  The Honorable Leonard P. Stark, District Judge for the United States District Court for the District of Delaware, sitting by designation.

2

5th Floor
New York, NY 10012-0000
  *Attorney for Amicus Petitioner*

—————————————

OPINION OF THE COURT
—————————————

HARDIMAN, *Circuit Judge*.

The question presented is whether an alien who has spent more than five years in prison for an aggravated felony is eligible for a waiver of deportation under former Immigration and Nationality Act (INA) § 212(c). We hold that he is not.

I

A native and citizen of Ecuador, Jorge Espinoza became a lawful permanent resident of the United States in 1980. In January 1994, he was served with an order to show cause charging him with deportability on the basis of a February 1993 New York conviction for selling cocaine. In response, Espinoza filed an application for a waiver of deportation under former INA § 212(c). Prior to his deportation hearing, however, Espinoza was paroled into the custody of the Immigration and Naturalization Service (INS) and his proceedings were administratively closed on December 5, 1994. As a result, Espinoza's application for § 212(c) relief was never adjudicated by the agency.

After his release from INS custody, Espinoza lived and worked in the New York City area until June 2004, when he

was arrested again. On February 22, 2007, Espinoza was convicted of conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A), and was sentenced to 120 months' imprisonment. After his 2007 conviction, the Department of Homeland Security (DHS) reopened Espinoza's 1994 deportation proceedings. In February 2010, DHS served Espinoza with an additional charge of deportability based on the 2007 conviction, which supplemented the charges that had been lodged in 1994.

In February 2010, Espinoza's first deportation hearing was held in York, Pennsylvania. At Espinoza's request, Immigration Judge (IJ) Walter Durling postponed the proceedings to give Espinoza time to seek an attorney. In April 2010, Judge Durling again postponed the hearing after Espinoza requested a list of attorneys to contact. Although he agreed to provide the list, Judge Durling told Espinoza that "the list is essentially worthless" because "[n]o organization on the list will agree to represent any individual who is still serving the terms of imprisonment." Three months later, Immigration Judge Jesus Clemente took over the proceedings and postponed Espinoza's hearing for a third time after Espinoza expressed uncertainty as to whether his family had retained counsel for him. Finally, on September 28, 2010, Espinoza's deportation hearing proceeded, although he still had not obtained counsel. Espinoza told Judge Clemente that he had reached out to attorneys on the list the court had provided him, but that he had not received any responses. Judge Clemente asked Espinoza if he was ready to proceed notwithstanding the absence of counsel, and Espinoza agreed

4

to do so. On May 31, 2011, Judge Durling ordered Espinoza removed from the United States to Ecuador.[1]

In July 2011, Espinoza appealed to the Board of Immigration Appeals (BIA), arguing, *inter alia*, that: (1) the Government had failed to prove that he was not an American citizen or national; and (2) he was eligible for a waiver of deportability under former INA § 212(c). On August 30, 2011, the BIA affirmed Judge Durling's determination that Espinoza was not an American citizen or national, but remanded the case so the Immigration Court could consider whether Espinoza might be eligible for § 212(c) relief.

During a September 27, 2011, hearing following remand, Judge Durling requested that the Government provide Espinoza with a "short memorandum" detailing the Government's argument for why Espinoza was ineligible for § 212(c) relief and continued the hearing until November 8. Before the scheduled hearing was conducted, however, on November 4 Judge Durling held that Espinoza was ineligible for relief under § 212(c) and entered a second order of deportation.[2]

---

[1] Because Espinoza contended at the September 28, 2010, hearing that he is a citizen of the United States, Judges Clemente and Durling conducted a number of further hearings between December 6, 2010, and May 31, 2011, to permit Espinoza to obtain evidence to support his claim. He was unable to do so.

[2] Because the Government filed its memorandum on November 2, 2011, it is likely that Espinoza did not have time

Once again, Espinoza appealed to the BIA, this time arguing: (1) he was eligible for § 212(c) relief; (2) his due process rights had been violated because he neither received the Government's § 212(c) memorandum nor had an opportunity to present his argument prior to the IJ's decision; and (3) he had been denied his right to counsel. In a March 15, 2012, opinion, the BIA agreed with Judge Durling's interpretation of relevant precedent addressing § 212(c) before ultimately "find[ing] no error in the Immigration Judge's legal conclusion that the respondent's 2007 aggravated felony conviction is not subject to waiver under section 212(c) under controlling Third Circuit law." App. 17. Alternatively, the BIA found that Espinoza was ineligible for § 212(c) relief because, by March 15, 2012, he had served five years in prison for his 2007 conviction, dating back to February 22, 2007. Finally, the BIA found Espinoza's due process and citizenship claims unpersuasive and dismissed his appeal, thereby affirming the IJ's November 4, 2011, deportation order. Espinoza petitioned for review of the BIA's August 30, 2011, and March 15, 2012, decisions.[3]

---

to review the memorandum and respond to it before Judge Durling's November 4 decision.

[3] Espinoza was released from the custody of the United States Bureau of Prisons on or about March 15, 2013, and was transferred to the custody of United States Immigration and Customs Enforcement. He was deported from the United States to Ecuador on or about March 26, 2013.

6

II

In support of his petition for review Espinoza claims: (1) he is eligible for discretionary relief from deportation under former INA § 212(c) and (2) his due process rights were violated when he was prevented from presenting his case prior to Judge Durling's November 4 decision and because the IJs failed to ascertain whether he had received the required list of attorneys.[4]

The BIA had jurisdiction under 8 C.F.R. §§ 1003.1(b)(3) and 1240.15, which confer appellate jurisdiction over decisions of immigration judges in removal proceedings.[5] Federal courts generally lack jurisdiction to

---

[4] Espinoza also challenges the BIA's conclusion that he is not a "national" of the United States within the meaning of 8 U.S.C. § 1101(a)(22) because he is not a United States citizen. Under the INA, the Attorney General's removal power is limited to "deportable aliens." *See* 8 U.S.C. § 1227(a). An alien is defined as "any person not a citizen or national of the United States." 8 U.S.C. § 1101(a)(3). Espinoza argues that even though he is not a citizen of the United States, he might still be considered a "national" under a "disjunctive" reading of the statutory provision that defines the term. *See* 8 U.S.C. § 1101(a)(22) ("The term 'national of the United States' means (A) a citizen of the United States, or (B) a person who, though not a citizen of the United States, owes permanent allegiance to the United States."). This argument is foreclosed by our decision in *Salim v. Ashcroft*, 350 F.3d 307, 310 (3d Cir. 2003) (per curiam).

[5] Before the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), "individuals

review final orders of removal based on an alien's conviction for an aggravated felony. 8 U.S.C. § 1252(a)(2)(C). Nevertheless, because Espinoza's appeal presents only constitutional claims and questions of law relating to the BIA's final removal order, we have jurisdiction under 8 U.S.C. § 1252(a)(2)(D). *See Papageorgiou v. Gonzalez*, 413 F.3d 356, 358 (3d Cir. 2005) (holding that "all aliens, including criminal aliens" are permitted "to obtain review of constitutional claims and questions of law upon the filing of a petition for review with an appropriate court of appeals").

"When, as here, the BIA affirms an IJ's decision and adds analysis of its own, we review both the IJ's and the BIA's decisions." *Martinez v. Att'y Gen.*, 693 F.3d 408, 411 (3d Cir. 2012) (citing *Dia v. Ashcroft*, 353 F.3d 228, 243 (3d Cir. 2003) (en banc); *Abdulai v. Ashcroft*, 239 F.3d 542, 549 (3d Cir. 2001)). We review questions of law de novo. *Fadiga v. Att'y Gen.*, 488 F.3d 142, 153–54 (3d Cir. 2007).

---

who were ineligible for admission into the United States and were never admitted into the United States were referred to as 'excludable,' while aliens who had gained admission, but later became subject to expulsion from the United States, were referred to as 'deportable.' After IIRIRA, aliens who were previously referred to as 'excludable' are termed 'inadmissible,' and the term 'removal proceedings' covers proceedings applicable to both inadmissible and deportable aliens. Thus, a reference to an order of removal would encompass an order of deportation." *Avila-Macias v. Ashcroft*, 328 F. 3d 108, 111 (3d Cir. 2003) (internal quotation marks and citations omitted).

## III

### A

We begin our evaluation of the impact of the five-year bar by exploring the evolution of the Attorney General's authority to grant aliens discretionary relief from deportation. Section 212 of the INA of 1952, codified at 8 U.S.C. § 1182, excludes certain classes of aliens from the United States, including those convicted of offenses involving moral turpitude or illicit narcotics trafficking. *See* Pub. L. No. 82-414, 66 Stat. 163, 182–87 (1952). That section was subject to a waiver provision, § 212(c), which was codified at 8 U.S.C. § 1182(c). The first sentence of § 212(c) provided: "Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General . . . ." 66 Stat. at 187, 8 U.S.C. § 1182(c) (repealed). Although § 212(c) "was literally applicable only to exclusion proceedings, . . . it . . . has been interpreted by the Board of Immigration Appeals . . . to authorize any permanent resident alien with 'a lawful unrelinquished domicile of seven consecutive years' to apply for a discretionary waiver from deportation." *INS v. St. Cyr*, 533 U.S. 289, 295 (2001) (citing *Matter of Silva*, 16 I. & N. Dec. 26, 30 (1976)).

A few decades after passing the INA, Congress began to narrow the class of permanent resident aliens who may apply for discretionary relief under § 212(c). Of critical significance to this appeal, Congress in 1990 amended § 212(c) to bar discretionary relief to any alien who has "been convicted of an aggravated felony and has served a term of

9

imprisonment of at least 5 years." *See* Immigration Act of 1990 § 511(a), Pub. L. No. 101-649, 104 Stat. 4978, 5052 (1990) (1990 Amendment).[6] When Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), it barred § 212(c) relief to those aliens who were convicted of a broad set of offenses, including "aggravated felonies, drug convictions, certain weapons or national security violations, and multiple convictions involving crimes of moral turpitude." *Perez v. Elwood*, 294 F.3d 552, 556–57 (3d Cir. 2002); s*ee* AEDPA, Pub. L. No. 104-132, 110 Stat. 1214, 1277–79 (1996) (amending 8 U.S.C. § 1182(c)). Later that same year, Congress passed IIRIRA, which repealed INA § 212(c), and replaced it with a new section, IIRIRA § 240A, codified at 8 U.S.C. § 1229b. *Perez*, 294 F.3d at 557. Under § 240A, the Attorney General does not have discretion to cancel removal for anyone previously "convicted of any

---

[6] The 1990 Amendment reads: "Section 212(c) (8 U.S.C. 1182(c)) is amended by adding at the end the following: 'The first sentence of this subsection shall not apply to an alien who has been convicted of an aggravated felony and has served a term of imprisonment of at least 5 years.'." This language was subsequently clarified "by striking 'an aggravated felony and has served' and inserting 'one or more aggravated felonies and has served for such felony or felonies'." *See* Miscellaneous and Technical Immigration and Naturalization Amendments of 1991 § 306(a)(10), Pub. L. No. 102-232, 105 Stat. 1733, 1751 (1991). "This technical change is of no significance to the issues presented here either in its text or its effective date . . . ." *Scheidemann v. INS*, 83 F.3d 1517, 1519 n.1 (3d Cir. 1996) (citing 105 Stat. at 1759).

aggravated felony." 8 U.S.C. § 1229b(a)(3); *Perez*, 294 F.3d at 557. IIRIRA also contains transitional rules that instruct courts not to apply the statute to deportation proceedings initiated before the statute's effective date of April 1, 1997. IIRIRA § 309(c)(1), Pub. L. No. 104-208, 110 Stat. 3009 (1996).[7]

In light of this statutory scheme, we consider Espinoza's criminal and immigration proceedings to determine whether he may seek discretionary withholding of deportation under § 212(c). Using all "traditional tools of statutory construction," we first ask "whether Congress has directly spoken to the precise question at issue." *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842, 843 n.9 (1984). "If Congress has done so, [our] inquiry is at an end; [we] 'must give effect to the unambiguously expressed intent of Congress.'" *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000) (quoting *Chevron*, 467 U.S. at 843).

B

Espinoza argues that because he was placed into deportation proceedings before IIRIRA became law, the transitional rules of § 309(c)(1) enable him to seek discretionary relief from deportation under former INA

---

[7] IIRIRA § 309(c)(1) states: "[I]n the case of an alien who is in exclusion or deportation proceedings as of the title III-A effective date—(A) the amendments made by this subtitle shall not apply, and (B) the proceedings (including judicial review thereof) shall continue to be conducted without regard to such amendments."

§ 212(c).  We need not address this argument because the 1990 Amendment bars Espinoza from seeking § 212(c) relief irrespective of IIRIRA.

At the time Espinoza filed his first application for § 212(c) relief in 1994, Congress had already amended the statute in 1990 to bar discretionary relief to those convicted of an "aggravated felony" who had served a term of imprisonment of at least five years.  The language of the 1990 Amendment is unequivocal: "The first sentence of [§ 212(c)] shall not apply to an alien who has been convicted of an aggravated felony and has served a term of imprisonment of at least 5 years."  104 Stat. at 5052 (internal quotation marks omitted).  As we have stated, "§ 212(c) plainly bars discretionary relief to aliens who have served at least five years' imprisonment for one or more 'aggravated felonies.'" *Scheidemann*, 83 F.3d at 1518.  Where, as here, the initial § 212(c) application was filed after 1990, the only date that matters is when the petitioner began serving his criminal sentence.  *See id.* at 1526 ("If an alien has served at least five years' imprisonment for a felony conviction, as petitioner here has, the only limitations on the applicability of the § 212(c) bar are two: (1) that the application for relief must have been submitted after the date of the bar's enactment, and (2) that the conviction must have been for an 'aggravated felony' as defined in the Act.").

Espinoza concedes that his conviction for conspiracy to possess with intent to distribute cocaine constitutes an aggravated felony under INA § 101(a)(43)(B), 8 U.S.C. § 1101(a)(43)(B).  By the time the BIA issued its final order of deportation on March 15, 2012, Espinoza had served more

12

than five years for his 2007 conviction and thus, as the BIA correctly held, he was ineligible for § 212(c) relief.[8]

Espinoza's sole rejoinder is that equity demands that he be relieved from the operation of the statute as written. He argues that "[b]ecause he had not served five years' imprisonment for an aggravated felony prior to his [September 1994] application [for § 212(c) relief], his application should not have been denied under the five-year bar." Espinoza Br. 25. Espinoza cites our decision in *Caroleo v. Gonzales*, 476 F.3d 158 (3d Cir. 2007), *abrogated on other grounds by Judulang v. Holder*, 132 S. Ct. 476 (2011), as support for the proposition that he was entitled to seek § 212(c) relief as a matter of equity.

In *Caroleo*, the BIA issued a final order of removal denying § 212(c) relief based on an arguably incorrect interpretation of the Supreme Court's holding in *St. Cyr*. *Caroleo*, 476 F.3d at 160–61. At the time of the order, Caroleo had not yet served five years in prison for his underlying aggravated felony conviction. *Id.* at 160. A few years later, he filed a special motion with the BIA, again seeking § 212(c) relief, and again arguing that he deserved relief under *St. Cyr*. *Id.* at 161. By this point, however, Caroleo had served more than eight years in prison. *Id.* He argued that we should, *nunc pro tunc*, consider his § 212(c) application retroactive to April 2001—the time when he first raised the *St. Cyr* issue before the IJ and BIA and before he had served five years in prison. *Id.* at 162. Because we held

_____

[8] Because Espinoza is ineligible for § 212(c) relief due to the five-year bar, we do not reach the BIA's alternative holding that Espinoza was also ineligible under IIRIRA § 240A.

13

that Caroleo was ineligible for § 212(c) relief on grounds unrelated to his *St. Cyr* argument, we did not determine whether he could seek § 212(c) relief. *Id.* at 162–63. Nevertheless, we stated:

> Were we to reach the [*St. Cyr* issue], we would hold that Caroleo should be permitted, on equitable grounds, to apply for § 212(c) relief despite having now served more than five years in prison . . . .

*Id.* at 162. Espinoza argues that this dictum applies to his petition for review. We disagree.

As we have noted, the 1990 Amendment unambiguously states that an aggravated felon who has served more than five years for his crime is ineligible for § 212(c) relief. *Scheidemann*, 83 F.3d at 1518; *see also Fernandes Pereira v. Gonzales*, 417 F.3d 38, 47 (1st Cir. 2005) ("[T]he language of § 212(c) seems to us utterly clear—the relief sought simply does not exist for an aggravated felon who has served five years of his felony term."). A court may not award equitable relief in contravention of the expressed intent of Congress. *See INS v. Pangilinan*, 486 U.S. 875, 883–85 (1988) ("[I]t is well established that '[c]ourts of equity can no more disregard statutory and constitutional requirements and provisions than can courts of law,'" *id.* at 883 (quoting *Hedges v. Dixon Cnty.*, 150 U.S. 182, 192 (1893) (alteration in original)). Because Espinoza has now spent more than five years in prison for an aggravated felony, he is statutorily precluded from seeking relief under § 212(c).

14

In addition, the facts of *Caroleo* are readily distinguishable from the facts of Espinoza's case. There, Caroleo had not yet served five years in prison at the time the BIA issued its arguably erroneous final order of removal.[9] *Caroleo*, 476 F.3d at 162. For Espinoza, however, the five-year period lapsed during the pendency of the administrative proceedings. By the time the BIA issued its final order of deportation on March 15, 2012, Espinoza had served more than five years in prison following his February 22, 2007, aggravated felony conviction. Unlike in *Caroleo*, where the BIA's decision to deny § 212(c) relief was arguably based on legal error alone, the BIA denied Espinoza's § 212(c) claim

---

[9] At least one of our sister courts has held that *nunc pro tunc* relief should be granted to an alien who became statutorily ineligible for § 212(c) relief based on the five-year bar *subsequent to* a legally erroneous denial of the alien's original application. *See Edwards v. INS*, 393 F.3d 299, 304, 312 (2d Cir. 2004). *But see Romero-Rodriguez v. Gonzales*, 488 F.3d 672, 679 (5th Cir. 2007) ("[T]his court's equitable *nunc pro tunc* authority cannot be used to fix the type of error that occurred when the BIA erroneously denied Romero's initial application for a § 212(c) waiver."); *Pereira*, 417 F.3d at 47 ("declin[ing] the [Second Circuit's] invitation" in *Edwards* because "the language of § 212(c) seems to us utterly clear—the relief sought simply does not exist for an aggravated felon who has served five years of his felony term"). The Second Circuit was careful to note, however, that it "express[ed] no views on whether an award of *nunc pro tunc* relief would be similarly warranted where the alien accrued more than five years imprisonment *during the pendency of the administrative appeals*." *Edwards*, 393 F.3d at 312 n.18 (emphasis added).

on two independent grounds: (1) a rejection of his § 212(c) argument based on IIRIRA and (2) the five-year bar. Even if we assume, *arguendo*, that the BIA erred in its interpretation of how IIRIRA affected Espinoza's § 212(c) claim, the five-year bar still prevented the BIA from granting Espinoza § 212(c) relief. Thus, *Caroleo* is inapposite. Simply put, we hold that the BIA correctly held that Espinoza was ineligible to seek § 212(c) relief because he had served more than five years for an aggravated felony by the time the BIA affirmed the IJ's deportation order.

IV

Espinoza also argues that he suffered two due process violations during the course of his deportation proceedings. We disagree.

First, Espinoza contends that we should remand the case because the IJs failed to comply with regulations promulgated by the Attorney General to protect his right to counsel. Section 1240.10(a)(2)-(3) of Title 8 of the Code of Federal Regulations directs that "'[i]n a removal proceeding, the immigration judge shall' '[a]dvise the respondent of the availability of free legal services provided by organizations and attorneys . . . located in the district where the removal hearing is being held' and shall '[a]scertain that the respondent has received a list of such programs[.]'" *Leslie v. Att'y Gen.*, 611 F.3d 171, 175 (3d Cir. 2010) (quoting 8 C.F.R. § 1240.10(a)(2)-(3)) (alterations in original). A review of the record indicates that the IJs satisfied these requirements.

A few minutes into the April 2010 hearing, Espinoza requested a list of attorneys to contact and Judge Durling

16

agreed to send Espinoza the list. The IJs then postponed Espinoza's hearing twice more—for a total of three postponements—thereby giving Espinoza more than five months to secure counsel. At the start of Espinoza's fourth hearing, the following exchange occurred:

> [IJ Clemente:] Now, sir, I gave you time to get an attorney. Were you able to get an attorney?
>
> [Espinoza:] I wrote letters to the attorneys that you guys provided me with, *the list*. And I haven't received anything in response yet. . . .

App. 147–48 (emphasis added). The record indicates that the IJs advised Espinoza of the availability of free legal services and provided him with a list of such programs in compliance with 8 C.F.R. § 1240.10(a)(2)-(3).

Espinoza's claim that Judge Durling denied him due process by rendering a decision on the § 212(c) issue on November 4 without first giving Espinoza the opportunity to present his arguments on November 8 is also unavailing. "Where an alien claims a denial of due process because he was prevented from making his case to the BIA or the IJ, he must show (1) that he was 'prevented from reasonably presenting his case' and (2) that 'substantial prejudice' resulted." *Fadiga*, 488 F.3d at 155 (quoting *Khan v. Att'y Gen.*, 448 F.3d 226, 236 (3d Cir. 2006)) (internal quotation marks, citation, and footnote omitted). Espinoza posits that "[h]ad [he] been given the opportunity to respond to the government's position, the IJ might well have . . . declined to order [his] removal." Espinoza Br. 32. But Espinoza fails to cite any evidence that suggests the outcome would have been

17

different had the IJ waited until after November 8 to issue his legal ruling.

When the BIA remanded Espinoza's case to Judge Durling on August 30, 2011, it explicitly noted that it was doing so because "recent decisions from the Second, Fifth, and Ninth Circuits support the conclusion that the respondent is not barred from obtaining 212(c) relief as a result of his 2007 conviction." App. 12 (citing *Pascua v. Holder*, 641 F.3d 316 (9th Cir. 2011); *Enriquez-Gutierrez v. Holder*, 612 F.3d 400 (5th Cir. 2010); *Garcia-Padron v. Holder*, 558 F.3d 196 (2d Cir. 2009)). Then, during the hearing following remand, Judge Durling and the Government attorney engaged in an extended colloquy about relevant caselaw. App. 69–73. When the Government attorney attempted to argue that Espinoza was precluded from § 212(c) relief based on Third Circuit precedent, Judge Durling pushed back based on the caselaw the BIA cited in its remand order. App. 71 ("Actually, the circuit courts out there . . . [p]ermit post-IIRIRA convictions if it's subject to 212(c). . . . So his 2007 federal drug trafficking offense, in those circuits they would say he is eligible for 212(c) for that.").

In the end, Judge Durling was persuaded by the Government's argument that relevant Third Circuit precedent precluded Espinoza from seeking § 212(c) relief. Though he ultimately ruled against Espinoza, Judge Durling exhibited a deft familiarity with the relevant caselaw and, in fact, noted the same argument during the hearing that Espinoza presented in his January 25, 2012, letter to the BIA explaining his grounds for appeal. *Compare* App. 69–73, *with* App. 45–47. The BIA also considered these arguments, which it had already cited in its previous remand order, and, after reviewing Judge Durling's decision de novo, issued its own

opinion rejecting them. Even now, Espinoza's § 212(c) arguments remain fundamentally unchanged from what Judge Durling posited during the remand hearing. The proceedings did not require additional factfinding and turned on a discrete question of law that Judge Durling understood and carefully considered. Judge Durling acknowledged Espinoza's best arguments during the September 27, 2011, hearing and Espinoza was able to present those arguments fully, first to the BIA and now to this Court. Therefore, Espinoza suffered no prejudice and was not deprived of due process.

V

Because Espinoza has served more than five years in prison for an aggravated felony, he may not seek discretionary relief from deportation under INA § 212(c). Furthermore, he suffered no due process violations during the pendency of his administrative proceedings. Therefore, we will affirm the BIA's decision ordering Espinoza deported from the United States.[10]

---

[10] Mr. Espinoza was represented pro bono by Gregory F. Laufer. The Court is grateful for Mr. Laufer's work on this case, which was consistent with the highest standards of the Third Circuit Bar.