NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-4832
_____

HUGO FERNANDO SAZO-GODINEZ,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES
OF AMERICA,
Respondent

_____

On Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA-1:A096-332-549)
Immigration Judge:  Honorable Andrew R. Arthur

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 17, 2015

Before:  AMBRO, HARDIMAN, SLOVITER, Circuit Judges

(Opinion filed: November 18, 2015 )

_____

OPINION*
_____

SLOVITER, Circuit Judge.

---

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7,
does not constitute binding precedent.

Hugo Fernando Sazo-Godinez petitions for review of a final order by the Board of Immigration Appeals ("BIA") denying his application for withholding of removal and relief under the Convention Against Torture ("CAT"). We will grant the petition and remand to the BIA for proceedings consistent with this opinion.

I.

Sazo-Godinez is a 43-year-old native and citizen of Guatemala who entered the United States without inspection in August 2003. He previously lived in Guatemala City with his wife and children whom he hoped to support by finding a job in the United States.

Shortly following Sazo-Godinez's arrival, the Department of Homeland Security ("DHS") apprehended him in Texas and commenced removal proceedings. After being released from custody, Sazo-Godinez failed to appear at his scheduled hearing and an Immigration Judge ("IJ") entered an *in absentia* order of removal. Nearly eight years later, DHS again apprehended him, this time in Pennsylvania. He had been working as a diesel mechanic in the meantime.

When DHS sought to enforce the outstanding removal order, Sazo-Godinez conceded removability, but applied for asylum, withholding of removal, CAT relief, and voluntary departure. In support of these applications, he testified before an IJ that he fears being persecuted and tortured by the 18th Street Gang, a notorious criminal enterprise with affiliates throughout Latin America. When he lived in Guatemala, the Gang's persistent efforts to recruit his children forced him to relocate his family on numerous occasions. This torment worsened after the 18th Street Gang learned that

2

Sazo-Godinez had used money earned in the United States to buy a house for his family. According to Sazo-Godinez, the 18th Street Gang's actions are motivated by the misperception that living in the United States has made him a wealthy man. This, he argued before the IJ, qualifies him for asylum and withholding of removal because it demonstrates persecution against a "particular social group": Guatemalans who are perceived to be wealthy as a result of previously living in the United States.

Although the IJ found Sazo-Godinez credible and granted his request for voluntary departure, the IJ denied his applications for asylum, withholding of removal, and CAT relief. In doing so, the IJ did not decide whether Sazo-Godinez had alleged a cognizable social group that might qualify him for asylum and withholding of removal. Rather, the IJ found that, even if such a group existed, Sazo-Godinez had nevertheless failed to establish a nexus between his membership in that group and the 18th Street Gang's decision to target his family. The IJ denied his application for CAT relief because the government had not acquiesced to any of the criminal acts perpetrated against his family.

Sazo-Godinez appealed to the BIA, which, in a separate decision, dismissed his appeal and entered a final order of removal. Sazo-Godinez filed a timely petition for review challenging the BIA's denial of his applications for withholding of removal and CAT relief.[1]

---

[1] Sazo-Godinez does not challenge the BIA's denial of his application for asylum, which he concedes is time-barred. Sazo-Godinez also does not challenge the BIA's conclusion that he forfeited the IJ's grant of voluntary departure by failing to show that he posted a bond pursuant to 8 C.F.R. § 1240.26(c)(3)(ii).

3

We have jurisdiction to review a "final order of removal" by the BIA. 8 U.S.C. § 1252(a)(1). Where the BIA issues its own decision on the merits instead of a summary affirmance, our jurisdiction extends only to the BIA's decision. *Abdulai v. Ashcroft*, 239 F.3d 542, 548-49 (3d Cir. 2001). Although there are exceptions to this rule, we will not review the IJ's decision unless presented with special circumstances. *Voci v. Gonzales*, 409 F.3d 607, 612 (3d Cir. 2005). Situations that allow us to review both decisions are narrowly limited to those "in which the language of the BIA's opinion directly states that the BIA is deferring to the IJ, or invokes specific aspects of the IJ's analysis and factfinding in support of the BIA's conclusions." *Id.* at 613.

Here, the Government argues that we should review the IJ's decision for purposes of evaluating Sazo-Godinez's claim for withholding of removal. According to the Government, the BIA based its decision to deny his claim on specific aspects of the IJ's nexus analysis and "not on a determination as to the cognizability of his proposed particular social group." Respondent's Br. at 16.

But the BIA did make a determination, albeit a perfunctory one, as to the cognizability of Sazo-Godinez's proposed social group. It explained:

> Those targeted for violence or crime by members of a drug gang are not members of a cognizable particular social group or targeted on account of another protected ground, such as political opinion. Those targeted for extortion, robbery, abduction, or violence by a gang due to their perceived affluence are not generally recognized to be members of a cognizable particular social group.

A.R. at 4 (internal citations omitted).  Although the BIA claimed to "agree with the Immigration Judge" that Sazo-Godinez is ineligible for withholding of removal, it is not clear from the decision whether this was intended as an endorsement of the IJ's nexus analysis or simply a concurrence with the IJ's ultimate conclusion.

Such vague statements do not qualify as the type of "special circumstances" that vest this Court with jurisdiction to review an IJ's decision.  This is especially true where, as here, the BIA appears to have relied on a fundamentally different line of reasoning than the IJ.  Instead of explaining that Sazo-Godinez had failed to establish a nexus between his persecution and membership in a social group, the BIA explained that he had failed the threshold requirement of identifying a cognizable social group.[2]  Although the BIA may have intended to endorse the IJ's analysis, any such intention is unclear and it is not our role to speculate.[3]  *See Marshall v. Lansing*, 839 F.2d 933, 944 (3d Cir. 1988) ("It will not do for a court to be compelled to guess at the theory underlying the agency's action; nor can a court be expected to chisel that which must be precise from what the agency has left vague and indecisive." (citation omitted)).  Accordingly, we lack jurisdiction to consider the IJ's decision when reviewing Sazo-Godinez's claim for

---

[2] This case is therefore distinguishable from situations in which the BIA merely added its own analysis.  *See, e.g.*, *Lupera-Espinoza v. Att'y Gen. of U.S.*, 716 F.3d 781, 785 (3d Cir. 2013) (noting that we review both decisions where the BIA agrees with the IJ and simply "adds analysis of its own").

[3] Indeed, the BIA's only citation to a specific portion of the IJ's analysis on this issue refers to the wrong page numbers.  *See* A.R. at 4 (citing pages 14-15 of IJ's decision, which concern Sazo-Godinez's claim for CAT relief and are unrelated to his claim for withholding of removal).

withholding of removal.  The same applies to his claim for CAT relief because the BIA did not defer to the IJ or invoke the IJ's analysis in denying that claim.

We review legal determinations by the BIA de novo, yet we defer to the BIA's reasonable interpretation of the law.  *Gomez-Zuluaga v. Att'y Gen. of U.S.*, 527 F.3d 330, 339 (3d Cir. 2008) (citing *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 838 (1984)).  We review findings of fact by the BIA for substantial evidence. *Valdiviezo-Galdamez v. Att'y Gen. of U.S.*, 663 F.3d 582, 590 (3d Cir. 2011).

III.

Sazo-Godinez contends that the BIA erred in denying his claim for withholding of removal because his proposed social group is cognizable under recent BIA precedent. Because the BIA did not apply its own recently clarified framework for determining social group cognizability, we will remand for proceedings consistent with this opinion.

A.

An applicant for withholding of removal may avoid being sent to a foreign country by showing that his or her "life or freedom would be threatened in that country because of . . . membership in a particular social group."  8 U.S.C. § 1231(b)(3)(A).  To obtain this relief, the applicant must (1) identify a cognizable social group, (2) establish membership in that group, and (3) show that s/he has a well-founded fear of persecution based on that membership.  *Fatin v. I.N.S.*, 12 F.3d 1233, 1240 (3d Cir. 1993).  A "key task" in establishing these elements is for the applicant "to show a sufficient 'nexus' between persecution and one of the listed protected grounds."  *Ndayshimiye v. Att'y Gen. of U.S.*, 557 F.3d 124, 129 (3d Cir. 2009).  The "nexus" inquiry is distinct from whether

6

his or her proposed social group is cognizable under the statute. *Gomez-Zuluaga v. Att'y Gen. of U.S.*, 527 F.3d 330, 345 n.10 (3d Cir. 2008).

In 2011, we remanded a case to the BIA to clarify what is needed to prove the existence of a "particular social group." *Valdiviezo-Galdamez v. Att'y Gen. of U.S.*, 663 F.3d 582, 608-09 (3d Cir. 2011). On remand, the BIA explained that a "particular social group" must be "(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 237 (BIA 2014). In explaining these requirements, the BIA cited past cases where it had rejected the existence of social groups premised on the common experience of being targeted by gangs for extortion and recruitment. *Id.* at 251 (citing *Matter of S-E-G-*, 24 I. & N. Dec. 579, 587 (BIA 2008) and *Matter of E-A-G-*, 24 I. & N. Dec. 591, 594 (BIA 2008)). In doing so, however, the BIA "emphasize[d]" that the social group inquiry must be applied to the unique facts of each case and that persecution by gangs does not necessarily preclude the existence of such a group. *Id.* Although ultimately a question of law, social group cognizability is first and foremost a "fact-specific inquiry" that is "based on the evidence." *Matter of W-G-R-*, 26 I. & N. Dec. 208, 209-10 (BIA 2014). We have not yet decided whether the BIA's explanation of the term "particular social group" is sufficient to address the concerns we expressed in *Valdiviezo-Galdamez*.

## B.

The alleged social group in this case is comprised of Guatemalans perceived to be affluent by virtue of having previously lived in the United States. The BIA concluded

7

that Sazo-Godinez's proposed social group is not cognizable, but the BIA reached this conclusion without discussing any of the three elements—immutability, social distinction, and particularity—that it recently explained are necessary to establish cognizability. Even the Government concedes that "the agency itself reached no holding regarding the cognizability of Sazo's proposed particular group." Respondent's Br. at 17 n.6. Without elaborating, the BIA relied on past decisions for the blanket proposition that cases involving perceived wealth, gangs, and crime do not implicate a cognizable social group. Yet, as the BIA recently emphasized, these decisions do not stand for such a broad proposition. The cognizability of a proposed social group must be addressed on a case-by-case basis. *Matter of M-E-V-G-*, 26 I. & N. Dec. at 251.

We understand this to mean that a proposed social group cannot be rejected until the BIA has analyzed the group's specific attributes under the framework set forth in *Matter of M-E-V-G-*. Here, Sazo-Godinez alleges a social group defined by an immutable characteristic not at issue in any of the decisions cited by the BIA: prior residence in the United States. *See, e.g.*, *Matter of Fuentes*, 19 I. & N. Dec. 658, 662 (BIA 1988) (being a "former policeman" is an immutable characteristic). We do not opine as to how much weight this characteristic should be afforded when applying the framework for deciding social group cognizability. But if the BIA wishes to premise its decision on the absence of a cognizable group, it must first subject Sazo-Godinez's

proposed group to the requisite case-by-case analysis.[4] *Cf. Pirir-Boc v. Holder*, 750 F.3d 1077, 1084 (9th Cir. 2014).

It is not our role to apply this factually specific, case-by-case analysis to a proposed social group when the BIA has not first done so itself. We will therefore remand to the BIA for further explanation. *See I.N.S. v. Orlando Ventura*, 537 U.S. 12, 16-17 (2002); *see also Pirir-Boc*, 750 F.3d at 1084 (remanding for the BIA to "perform the required evidence-based inquiry" set forth in *Matter of M-E-V-G-*).

We do not decide whether the BIA's interpretation of the term "particular social group" in *Matter of M-E-V-G-* and *Matter of W-G-R-* resolves the concerns we expressed in *Valdiviezo-Galdamez.* The occasion to do so will not arise until we are asked to review a BIA decision applying that interpretation in the first instance.

IV.

Sazo-Godinez argues that the BIA erred in denying his claim for CAT relief because it is more likely than not that he will be tortured upon removal to Guatemala and that government officials will acquiesce to his harm. To prevail on his CAT claim, Sazo-

---

[4] Although the BIA has previously decided that "upper class" Guatemalans are not a cognizable social group, in that decision perceived wealth was the "sole criterion." *Matter of A-M-E- & J-G-U-*, 24 I. & N. Dec. 69, 76 (BIA 2007). There the applicant came from a wealthy family in Guatemala and feared that, upon return, she would encounter the same type of criminal conduct that she experienced before leaving and which is experienced generally by other wealthy Guatemalans. *Id.* at 71. In finding that this proposed group was not cognizable, the BIA stated, "We do not rule out the possibility that, in appropriate circumstances, 'wealth' may be a shared characteristic of a social group." *Id.* at 75 n.6. Here, wealth is not the sole criterion and, in any event, there is no evidence that Sazo-Godinez actually was or will be a member of the upper class in Guatemala. Rather, the social group he alleges is comprised of Guatemalans perceived to be affluent solely as a result of having lived in the United States.

9

Godinez must "establish that it is more likely than not that he . . . would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). He must also establish that a government official would acquiesce to such torture. 8 C.F.R. § 1208.18(a)(1).

The BIA denied Sazo-Godinez's CAT claim in a single sentence: "Similarly, the respondent did not to [sic] show that he is more likely than not to be tortured in Guatemala with the consent or acquiescence (including willful blindness) of a government official." A.R. at 4. Other than to characterize its decision as "similar" to the one denying Sazo-Godinez's separate claim for withholding of removal, the BIA did not explain its reasoning, discuss any of the evidence, or defer to the IJ's decision on this issue. *See id.*

The BIA's conclusory, one-sentence denial of Sazo-Godinez's claim for CAT relief is insufficient for us to conduct a meaningful review. *See Awolesi v. Ashcroft*, 341 F.3d 227, 229 (3d Cir. 2003). The BIA "is not required to write an exegesis on every contention" and we will not question the adequacy of its reasoning merely because it "could have been more detailed." *Sevoian v. Ashcroft*, 290 F.3d 166, 178 (3d Cir. 2002) (internal citation omitted). But "we cannot give meaningful review to a decision in which the BIA does not explain how it came to its conclusion." *Awolesi*, 341 F.3d at 229. The BIA must first consider the evidence and sufficiently explain the basis for its decision. *See Huang v. Att'y Gen. of U.S.*, 620 F.3d 372, 388 (3d Cir. 2010) (remanding for further review where BIA "simply failed to address any evidence that, if credited, would lend support to [the petitioner's asylum claim]").

10

Accordingly, we will remand Sazo-Godinez's CAT claim to the BIA for further explanation. *See, e.g.*, *Pirir-Boc*, 750 F.3d at 1085 (remanding where BIA had denied CAT claim "in a single sentence").

V.

For the foregoing reasons, we will grant the petition for review and remand to the BIA for proceedings consistent with this opinion.